# ALLMAN *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 214. Argued March 19, 1889. — Decided May 13, 1889.

The " fifty per centum on the contract as originally let," to which the power
of the Postmaster General to expedite service under a contract for carry-
ing the mails is restricted by the proviso in § 2 of the act of April 7,
1880, c. 48, 21 Stat. 72, is fifty per cent on the compensation for all the
service, both as originally stipulated and as increased by additional ser-
vice, which is to be determined by the rates fixed in the original contract.

Decisions of the Postmaster General, imposing forfeitures on contractors
for failure to carry the mails according to their contracts, are not sub-
ject to review by this court.

THE appellant, George Allman, on the 31st of January, 1885,
filed a petition in the Court of Claims against the United States
asking judgment for the sum of $3607.13, which he alleged
was the balance due for services rendered by him under two
contracts for carrying the United States mail from July 1,
1878, to July 1, 1882.

It appears from the statements of the petition that the
appellant carried the mails for four years over each of two
routes, No. 46,210 and No. 46,211, under these contracts entered
into with the Postmaster General, and in conformity to the
orders subsequently issued by him. Whilst the services were
being rendered, the Postmaster General, in the exercise of
authority expressly reserved in these contracts, by successive
orders, increased the number of trips per week on both routes;
on the first by raising the number from six to seven trips per
week, (afterwards reduced back to six,) and on the second by
raising the number from one to seven trips per week. For this
increase he allowed the contractor a *pro rata* increase of com-
pensation; raising the pay on the first route to a rate of
$5238.33 per annum for increasing the trips from six to seven
a week, and on the second route $4893 for the increase from
one to seven trips a week. This increased compensation was
paid by the department, and is not involved in this litigation,
except as incidental to another demand hereinafter stated. On
both these routes the Postmaster General increased the rate of

speed by shortening the running time between the termini; on the first, from 36 to 28 hours per trip, and on the second, from 34 to 18 hours per trip. In consideration of this increased expedition, additional pay was allowed the contractor on the first route, $2619.16 per annum, and on the second route $2446.50 per annum, for the additional stock and carriers thus rendered necessary. This allowance was computed at the rate of 50 per cent of the annual sum paid, in accordance with the contract, for the services expedited, and was less than the proportionate increase of the cost of the service demanded by the changes in the schedule, according to the sworn statements of the contractor.

On the 1st of August, 1881, the Postmaster General promulgated an order reducing all the allowances for the increased expedition heretofore recited; and directed that the 50 per cent paid to the contractor for such service should be computed upon the service rendered at the time the contracts were entered into before any additional trips had been ordered on either route, and not upon the service as actually expedited. This order making the reduction did not change the number of trips on either of the routes. The contractor was still required to make daily trips on the second route, and to make these trips upon the expedited schedule. The effect of the order was simply to reduce his compensation in the case of the first route to fifty per cent upon the pay of six trips only, instead of seven per week; and in the case of the second route, its effect was to allow him the compensation at the rate of 50 per cent upon the pay for one trip per week, although he continued to make daily trips in accordance with the expedited schedule.

The difference between the amounts paid to the claimant under this last order and the amount he would have received under the allowance fixed by the former orders, according to the stipulation of the contracts, constitutes the principal demand in the present suit. A short time after the number of trips was increased on the first route from six to seven per week it was reduced back to six, and one month's extra pay allowed to the contractor as indemnity for the discontinuance. The petition sets up a demand for the 50 per cent thereon, which has been withheld by the Postmaster General.

Another claim set up in the petition is for the amount deducted, as forfeitures alleged to be wrongfully imposed by the Postmaster General, for failures by the contractor to cause the mail to be carried within the time prescribed. The petition was demurred to, and this appeal is from the judgment of the court sustaining the demurrer.

*Mr. A. J. Willard* (with whom was *Mr. Samuel M. Lake* on the brief) for appellant.

*Mr. Assistant Attorney General Howard* for appellee.

Mr. Justice Lamar, after making the above statement of the case, delivered the opinion of the court.

The contracts in question were made in conformity with the provisions of §§ 3960 and 3961 of the Revised Statutes. Section 3960 is as follows:

"Compensation for additional service in carrying the mail shall not be in excess of the exact proportion which the original compensation bears to the original service; and when any such additional service is ordered, the sum to be allowed therefor shall be expressed in the order, and entered upon the books of the department; and no compensation shall be paid for any additional regular service rendered before the issuing of such order."

Section 3961 provides:

"No extra allowance shall be made for any increase of expedition in carrying the mail unless thereby the employment of additional stock and carriers is made necessary, and in such case the additional compensation shall bear no greater proportion to the additional stock and carriers necessarily employed than the compensation in the original contract bears to the stock and carriers necessarily employed in its execution."

All the orders made by the Postmaster General, subsequent to the execution of these contracts, and whilst the service was in course of performance, were made after the act of Congress of April 7, 1880, which contained this proviso:

"*Provided*, That the Postmaster General shall not hereafter

have the power to expedite the service under any contract either now existing or hereafter given to a rate of pay exceeding fifty per centum upon the contract as originally let." 21 Stat. 72.

The Attorney General, construing the provision last quoted, in a letter to the Postmaster General, dated July 20, 1881, held that "the original letting, and not any subsequent increase of service and pay," was made "the standard of limitation." It was in conformity with this opinion that the Postmaster General withheld from the appellant the 50 per cent on the expedited service under his contract.

We think it is clear that the language of the proviso may be interpreted in accordance with the original orders of the Post-Office Department and pursuant to the terms of the contracts sued on. Those orders allowed the contractor, for expedition, 50 per cent additional upon the sum paid, for the service actually performed. These allowances did not exceed 50 per cent of the rate of compensation fixed by the contracts as originally let, though they did exceed 50 per cent of the sum named in those contracts. The proviso in express terms refers to the "rate of pay" established in the contracts as originally let; and it is the rate of pay, not the amount expressed in the first contract, which is manifestly intended to be the unit of computation.

Our construction of this legislation, considered in *pari materia* with the provisions of §§ 3960 and 3961, is this: Section 3960 treats the rate of pay for additional service as definitely fixed by the original contract, and under its provisions the compensation, which the contractor is to receive for each extra trip placed upon his route, is to bear an exact proportion to the additional service performed; that is, it is to be based upon the rate established by the original contract. Section 3961 has direct reference to the compensation to be paid for the expedited service, and expressly provides that, in computing such compensation, the rate of pay fixed in the original contract is to be taken as the standard of limitation, which shall not be exceeded. These two sections left it within the discretion of the Postmaster General to expedite the service

to an indefinite extent, and to allow a *pro rata* compensation therefor. The proviso added in 1880 was clearly intended to limit that discretion by providing that thereafter he should not have authority to expedite the service, under any contract, beyond 50 per cent of the rate fixed in the original contract. The circumstances under which contracts for the transportation of the mails are awarded, we think, sustain this construction. Such awards are made after public advertisement, and upon competitive bids; and it is presumed that the contract price is at as low a rate as can be made consistently with a proper performance of service. In the present case, it appears from the record that the actual cost of the expedition ordered upon the single one of the seven weekly trips upon the second route was more than 50 per cent of the aggregate sum named in the original contract. The interpretation on which the last order is based assumes that Congress intended to leave with the Postmaster General the power to exact from a contractor seven times the service stipulated in the contract as originally let, and to allow but 50 per cent compensation on the amount named in that contract.

The construction contended for by the appellant is in harmony with the previous legislation on the subject, and the established policy of the mail service, and is entirely equitable.

As to so much of the demand as is claimed in the petition to be due to the petitioner under the contracts, and as to the 50 per cent of one month's extra pay, we hold and decide that the Court of Claims erred in sustaining the demurrer.

But with regard to the claim for the amount deducted as forfeitures imposed by the Postmaster General, because the contractor failed to cause the mail to be carried between the termini within the time prescribed, it is considered that these forfeitures were made by virtue of the power conferred upon the Postmaster General by the statutes, and also recognized by the terms of the contracts to be within his discretion, and are not subject to review by this court. *Chicago Railway Company* v. *United States*, 127 U. S. 406, 407; *Eastern Railroad Co.* v. *United States*, 129 U. S. 391, 396.

As far as the claim for the deduction of the amount of these forfeitures is concerned, the demurrer was properly sustained.

*The judgment is reversed, and the case remanded for action in accordance with the principles of this decision.*