Fboessel, J.
This is an appeal by the Superintendent of Insurance from an order of the Appellate Division, annulling his determination, by which he levied $13,000 in civil penalties upon respondent for its willful violations of sections 154 (subd. 7) and 204 (subd. 1, par. [c]) of the Insurance Law. The violations charged were the issuance of 13 policies of group credit life insurance without appellant’s approval as required by said statutes.
Subdivision 7 of section 154, enacted April 14, 1958, but not effective until October 1, 1958, provides that insurers must file with the Superintendent their “forms pertaining to credit insurance together with [their] premium rates for policies of credit insurance to be issued to any policyholder, and the same shall be subject to his approval. * * * [T]he superintendent shall not approve any such forms or premium rates if such premium rates are unreasonable in relation to the benefits provided ” (emphasis supplied). Paragraph (c) of subdivision 1 of section 204 (which section relates to group life insurance), as amended in 1958, contains substantially the same provisions with regard to credit insurance.
As we pointed out in Matter of Old Republic Life Ins. Co. v. Wikler (9 N Y 2d 524, 528; herein called Wikler litigation), these new statutes were aimed at correcting the ‘ ‘ abuses in the credit life insurance field”, whereby premium rates “were often excessive and there was a great variance in rates 1 without apparent reason ’ We also noted (id., pp. 527-528) that prior to 1958 premium rates for policies of group credit life insurance were not subject to the approval of the Superintendent, as were *52 those for accident or health insurance. (See, also, Report of Joint Legislative Committee on Commerce and Economic Development, which recommended the new statutes, N. Y. Legis. Doc., 1958, No. 84, p. 73.)
Pursuant to his authority under the new statutes, as well as section 21 of the Insurance Law, appellant, after notice and an industry-wide hearing held August 5, 1958, promulgated Regulation No. 27A which, as amended, became effective December 5, 1958. Said regulation, in addition to reiterating the statutory requirement for filing of rates for policies to be issued, sets forth “ Standards for premium rates” which “will be considered adequate and not unreasonable in relation to the benefits provided ”, but allows insurers to file rates in excess of the “ standards ” if they demonstrate such rates conform to the standards set forth in subdivision 7 of section 154.
In September, 1958, respondent, along with another insurance company, seeking to annul Regulation 27A, instituted the Wilder litigation by an article 78 proceeding. On September 30, execution and enforcement of the regulation were stayed pending the hearing and final determination of that proceeding. On February 26, 1960, Special Term annulled the regulation on the ground that the new statutes “ did not confer on the Superintendent ‘ the power and jurisdiction to fix maximum rates ’ ” (Matter of Old Republic Life Ins. Co. v. Wikler, 12 A D 2d 310, 315). Thereafter, however, on February 23, 1961, the Appellate Division reversed Special Term and dismissed the petition (12 A D 2d 310), and two months later our court affirmed (9 N Y 2d 524, supra).
Meanwhile, commencing March 1, 1959 — nearly a year after the new statutes had been enacted — respondent issued and delivered in New York the 13 policies of group credit life insurance involved here, 12 while the stay pertaining to Regulation 27A was in force, and the last on March 15, 1960 after the regulation had been annulled. One was issued on Form RP 327, the remainder on Form RP 342. On July 29, 1960, pursuant to section 225 of the Insurance Law, the Superintendent instituted the penalty proceeding.
The record of the hearing reveals the following evidence: Under subdivision 1 of section 154, which provides for approval of life insurance policy forms, the Superintendent had approved *53 both Forms BP 342 and BP 327 prior to 1958; and his approval had not been withdrawn. When approved, all blank spaces, including those for premium rates, had been filled in. However, an examiner in the policy bureau of the Insurance Department testified that such rates were considered for illustrative purposes only, and that the department did not pass on the rates. His testimony was corroborated by department rules, dated March 3, 1953, sent to all group life insurance companies, and was also supported by the legislative committee report referred to supra, in which it was stated: “As the law now stands, the insurance companies need not file their rates for group credit life with the Insurance Department, and approval of the rates by the Superintendent is not required.” (N. Y. Legis. Doc., 1958, No. 84, p. 73, supra.)
Bespondent contended, however, that the policies had been approved in toto, that the 1958 amendments did not automatically revoke said approval, and that if appellant desired to withdraw his approval he should have taken appropriate steps under section 141 of the Insurance Law, which provides: “ Whenever * * * the superintendent is authorized to give his approval of any form of insurance policy * * *, he may, after notice and hearing * # *, withdraw an approval previously given, if the use of such form is contrary to the legal requirements applicable to such form at the time of such withdrawal * * * or in the case of * * * life insurance, * * * if in his judgment the use of such form would be prejudicial to the interests of its policyholders or members, or it contains provisions which are unjust, unfair or inequitable. Any such withdrawal shall be effective at the expiration of such period, not less than ninety days after the giving of notice of withdrawal, as the superintendent shall in such notice prescribe. * * * ”
Bespondent also argued that its admitted issuance of the policies without obtaining appellant’s approval under the new statutes was not “wilful”, so that the penalty provisions of section 225 were improperly invoked. The proof on this issue, however, consisting mainly of letters between the Superintendent and respondent’s attorneys, written while the Wilder litigation was pending, established beyond peradventure that respondent, with full knowledge of the possible consequences, took the calculated risk of disobeying the plain mandate of the new *54 statutes. Thus, in a letter to appellant dated February 18, 1959, respondent’s attorneys stated: “ In our recent conferences you have recognized the effectiveness of the stay so far as the Regulation, as amended, is concerned, but you have taken the position that, quite apart from the Regulation, our clients have a duty to comply with the statute itself and that this duty obliges all companies writing credit insurance to file with you •their forms of policies together with premium rates and to obtain your approval thereof.”
On February 20, before any of the 13 policies were issued, the Superintendent replied, stating that any request by him to file forms and rates for consideration under the statute ‘ ‘ was merely all inherent part of my broader demand that your clients cease and desist from further violations of the Insurance Law occasioned through their writing of credit insurance in this state prior to the Superintendent’s approval of forms and rates applicable thereto, in accordance with the Insurance Law, namely, Sections 154(7) and 204(l-c).” (Emphasis supplied.) It should be noted that during the Wilder litigation, respondent submitted certain credit insurance forms and rates for approval, but not RP 342 or RP 327. House counsel for respondent testified that if the submitted material was approved, respondent intended to discontinue use of RP 342 and RP 327 but ‘ ‘ depending on the rate that we got approval of ”.
Appellant, after reciting his findings, concluded that respondent had willfully violated the applicable statutes within the meaning of section 225. In annulling appellant’s determination, the Appellate Division — the proceeding having been transferred to that court pursuant to section 1296 of the Civil Practice Act — stated that the 1958 amendments did not automatically invalidate the prior approval of Forms RP 342 and RP 327. The court grounded its view on the fact that, pursuant to subdivision 1 of section 154, the forms had been approved and the rates filed before 1958, and said approval had not been withdrawn pursuant to section 141. The court further stated that even if a different construction of the statutes was to be adopted, “it would be doubtful if” respondent’s actions constituted “wilful” violations of the statutes within the meaning of section 225.
In our opinion, the section 141 procedure was wholly inapplicable to the credit life policies issued in this case after October *55 1, 1958. Without reference to existing policy forms, the new statutes created an entirely new procedure for approving credit life insurance rates, granting to the Superintendent a new power over them. The Superintendent was mandated not to approve forms or rates if the latter were ‘ ‘ unreasonable in relation to the benefits provided ’ ’, a standard not theretofore applicable to credit life insurance. Moreover, subdivision 7 of section 154 clearly speaks of £i policies of credit insurance to be issued”, i.e., after its effective date, which was nearly six months after its enactment, and the policies here were issued during a period commencing more than 10% months following its enactment.
The remaining question is whether respondent’s actions constituted “wilful” violations of the new laws. In People v. Broady (5 N Y 2d 500, 505-507), we had occasion to determine the meaning of the word “ wilfully ” as used in then subdivision 6 of section 1423 of the Penal Law, a felony punishable by two years’ imprisonment. We approved the trial court’s instruction in that case that “ 1 Wilful ’ does not mean that a person does an act motivated by feelings of spite, malice or hate. It merely means intentionally doing an act and knowing, that the act is being done.” We rejected defendant’s contention that willfully in that statute meant wantonly and maliciously and, since the present case is a civil proceeding, criminal intent is not a necessary element.
The holding in Wass v. Stephens (128 N. Y. 123), commented upon in People v. Broady (supra, at p. 506), is not apt here since there the court was concerned with the phrase ‘ ‘ wilfully or maliciously ”, whereas in the instant case, as in Broady, the key word is merely “ wilfully ”. The District Court’s interpretation of the word £ £ wilful ’ ’, as used in an Internal Revenue penalty statute, in Kellems v. United States (97 F. Supp. 681, 682), was rejected by the Ninth Circuit Court of Appeals in Bloom v. United States (272 F. 2d 215, 223-224, cert. den. 363 U. S. 803). We agree with the Circuit Court that the basic elements of willfulness do not include £ £ evil motive, lack of justification, bad purpose, or something done or not done without justifiable excuse”. (See, also, Braden v. United States, 365 U. S. 431; Morissette v. United States, 342 U. S. 246, 259-260; Peoples. Young, 11 N Y 2d 274; People v. Werner, 174 N. Y. 132.) Wadley So. Ry. v. Georgia (235 U. S. 651) does not support *56 respondent, who never challenged the statutes as amended until after the penalties were imposed.
In light of the foregoing, it is our opinion that the word “ wilful ” as used in section 225 of the Insurance Law means no more than intentional and deliberate. Upon this view, there can be no doubt that the Superintendent was fully warranted in finding that respondent had ‘ ‘ wilfully ’ ’ violated the new statutes. Respondent was fully apprised of appellant’s proper position that delivery of the policies constituted a violation of the amended statutes themselves, which in clear terms provided for approval of rates as well as forms in policies “ to be issued ”, and the stay with respect to the regulation did not operate to stay the enforcement of the statutes. Fully aware of the risk involved, and after having been duly cautioned by the Superintendent, respondent nonetheless accepted the risk and disobeyed the statutes, thereby securing a decided advantage over the other insurance companies who complied with the law, and must now pay the penalties, the amounts of which are not challenged. Reliance upon legal advice, of course, furnishes no excuse under the circumstances here (People v. Marcus, 261 N. Y. 268, 294; People v. D’Amato, 12 A D 2d 439, 443; Matter of M. Anonymous v. Arkwright, 5 A D 2d 790, 791). The determination of the Superintendent, who sought to enforce the plain mandate of the new statutes, is based on substantial evidence, virtually undisputed, and may not be said to be arbitrary or capricious.
The order appealed from should be reversed, and the determination of the Superintendent of Insurance reinstated, with costs in this court and in the Appellate Division.
Chief Judge Desmond and Judges Dye, Ftjld, Van Voorhis, Burke and Foster concur.
Order reversed, etc.