(No. 45984.-

THE CITY OF WAUKEGAN *et al.,* Appellees, v. THE POLLUTION CONTROL BOARD *et al.*—(Environmental Protection Agency *et al.,* Appellants.)

*Opinion filed March 29, 1974.—Rehearing denied May 31, 1974.*

William J. Scott, Attorney General, of Springfield (Thomas J. Immel, Assistant Attorney General, and Merideth Wright (Senior Law Student), of counsel), for appellants.

Conzelman, Schultz & Snarski, and Hall, Meyer, Fisher, Holmberg, Snook and May, both of Waukegan (Murray R. Conzelman, of counsel), for appellees.

MR. JUSTICE WARD delivered the opinion of the court:

In October, 1971, the Illinois Environmental Protection Agency filed a complaint with the Pollution Control Board (hereafter, the Board) against the City of Waukegan, Zion State Bank and Trust Company, T-K City Disposal, Inc., and Tewes Co., Inc., charging various violations of the Environmental Protection Act, including a charge of having operated a refuse disposal site without obtaining a permit from the Environmental Protection Agency (Ill. Rev. Stat. 1971, ch. 111½, par. 1021(e)). After a hearing, the Board imposed a fine of $1000 against the City of Waukegan, and fines of $250 against the T-K Disposal,

Inc., and Tewes Co., Inc. The charges against the Zion State Bank and Trust Company were dismissed by the Board.

The Board's order was appealed by the City of Waukegan, T-K City Disposal, Inc., and Tewes Co., Inc., to the Appellate Court for the Second District under provisions of the Environmental Protection Act and the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1041; ch. 110, par. 264 *et seq.*). That court, holding that the grant of authority to the Board to impose a discretionary fine was an unlawful delegation of judicial power, reversed and set aside the Board's order. (11 Ill. App. 3d 189.) We granted leave to appeal.

But one question is before us: Was the authority given the Board to impose monetary penalties under the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, pars. 1033(b), 1042) a delegation of judicial power in violation of the separation-of-powers provision of the Constitution of Illinois or in violation of the Constitution of the United States?

The challenged section of the Act confers authority on the Board to impose a penalty of not to exceed $10,000 for a violation of the Act, or of a Board regulation or order, and to impose an additional penalty not to exceed $1,000 for each day of continuing violation.

Whether the grant of authority was valid has been considered in three other appellate districts. The court for the Fifth District held that the constitutional separation of powers had been violated (*Southern Illinois Asphalt Co. v. Environmental Protection Agency,* 15 Ill. App. 3d 66), and in the First and Third Districts the delegation of power was held to be valid (*Ford v. Environmental Protection Agency,* 9 Ill. App. 3d 711; *Incinerator, Inc. v. Illinois Pollution Control Board,* 15 Ill. App. 3d 514).

It is not disputed that there is before us only the question of the imposition of civil penalties. There is no contention that the penalties concerned here were de-

signed to be or are considered criminal sanctions. See 1 K. Davis, Administrative Law Treatise sec. 2.13 (1958).

Section 1 of article II of the Constitution of Illinois of 1970 provides:

> "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another."

The provision is essentially the same as that of our 1870 Constitution. The only change is in simplified language. There was no intent to change the existing law. The report of the Committee on Local Government on the Proposed Separation of Powers Article of the 1970 Constitutional Convention states in part:

> "The Committee did not intend to effect a change in the common law which has developed from the present language [i.e., of 1870 Constitution]." (6 Record of Proceedings, Sixth Illinois Constitutional Convention 566.)

The following comment also indicates that, consistent with decisions under the 1870 Constitution, no inflexible separation of powers was being considered:

> "The point was made during Committee deliberations that the present language may be construed as being inconsistent with a constitutionally created commission, agency or office (such as Ombudsman) having powers similar to one or more of the three principal governmental departments. The Committee is of the view that neither the present language nor the proposed language is inconsistent with such a hybrid commission, agency or office." 6 Proceedings 566-567.

One of the earliest (1839) and one of the enduring commentaries in Illinois on the separation of powers appears in *Field v. People ex rel. McClernand*, 3 Ill. (2 Scam.) 79, 83-84. It was said:

> "The first and second sections of the first article of the [1818] Constitution divide the powers of Government into three departments, the legislative, executive, and judicial, and declare that

neither of these departments shall exercise any of the powers properly belonging to either of the others, except as expressly permitted. This is a declaration of a fundamental principle; and, although one of vital importance, it is to be understood in a limited and qualified sense. It does not mean that the legislative, executive, and judicial power should be kept so entirely separate and distinct as to have no connection or dependence, the one upon the other; but its true meaning, both in theory and practice, is, that the whole power of two or more of these departments shall not be lodged in the same hands, whether of one or many. That this is the sense in which this maxim was understood by the authors of our government, and those of the general and State governments is evidenced by the constitution of all. In every one, there is a theoretical or practical recognition of this maxim, and at the same time a blending and admixture of different powers. This admixture in practice, so far as to give each department a constitutional control over the other, is considered, by the wisest statesmen, as essential in a free government, as a separation."

*Field* has had a continuing vitality. In 1966 we cited *Field* in *Hill v. Relyea,* 34 Ill.2d 552, 557, saying: "[T]he true meaning, in theory and in practice, of the doctrine of separation of powers is 'that the whole power shall not be lodged in the same hands, whether of one or many.' (*Field v. People ex rel. McClernand,* 2 Scam. 79, 83.) The separation of powers doctrine was not designed to achieve a complete divorce between the three departments of a single operating government. (*People v. Reiner,* 6 Ill.2d 337.)"

It has been generally recognized that separation of powers does not forbid every exercise of functions by one

branch of government which conventionally is exercised by another branch. Professor Frank Cooper (1 F. Cooper, State Administrative Law 16 (1965)) observes: "[T]he real thrust of the separation of powers philosophy is that each department of government must be kept free from the control or coercive influence of the other departments." He also indicates that it may be irrelevant if an agency has legislative or judicial characteristics so long as the legislature or the judiciary can effectively correct errors of the agency. The notion was stated more fully in 1 K. Davis, Administrative Law Treatise 68-69 (1958):

"In the organic arrangements that we have been making in recent decades in the establishment and control of administrative agencies, the principle that has guided us is the principle of check, not the principle of separation of powers. We have had little or no concern for avoiding a mixture of three or more kinds of powers in the same agency; we have had much concern for avoiding or minimizing unchecked power. The very identifying badge of the modern administrative agency has become the combination of judicial power (adjudication) with legislative power (rule making). But we have taken pains to see that the agencies report to and draw their funds from our legislative bodies, that the personnel of the agencies are appointed and reappointed by the executive, and that the residual power of check remains in the judiciary." See also Davis, A New Approach to Delegation, 36 U. Chi. L. Rev. 713 (1969).

The Supreme Court of the United States has never considered that the powers in government are held in rigidly separated compartments. Professor Davis (1 K. Davis, Administrative Law Treatise sec. 2.12, at 131) has observed: "The Supreme Court of the United States has never held that judicial power has been improperly vested

in an agency, although the question has come up in [many] cases ***." Nor has the court expressed alarm or undue concern about conferring a power to impose monetary penalties on an administrative body. As early as 1909 the court upheld the grant of power to the Secretary of Commerce and Labor to impose monetary penalties for violations of an immigration statute. In *Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 53 L. Ed. 1013, 1022, 29 S. Ct. 671, it was said:

> "In accord with this settled judicial construction the legislation of Congress from the beginning, not only as to tariff, but as to internal revenue, taxation, and other subjects, has proceeded on the conception that it was within the competency of Congress, when legislating as to matters exclusively within its control, to impose appropriate obligations, and sanction their enforcement by reasonable money penalties, giving to executive officers the power to enforce such penalties without the necessity of involving the judicial power."

See also *Lloyd Sabaudo Societa v. Elting,* 287 U.S. 329, 77 L. Ed. 341, 53 S. Ct. 167; *Elting v. North German Lloyd,* 287 U.S. 324, 77 L. Ed. 337, 53 S. Ct. 164; *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 84 L. Ed. 1263, 60 S. Ct. 907; *Helvering v. Mitchell,* 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630; *N. A. Woodworth Co. v. Kavanagh,* 102 F. Supp. 9, 11, *aff'd* (6th Cir.), 202 F.2d 154.

Partly as a consequence of the court's decisions, many Federal agencies have been empowered by the Congress to impose monetary penalties directly, that is, on the agency's own action and authority. See, *e.g.,* Occupational Safety and Health Act of 1970, 29 U.S.C. sec. 666 (1970); the Postal Service, 39 U.S.C. secs. 5206, 5603 (1970), 49 U.S.C. sec. 1471 (1970), C.F.R. secs. 927.1, 927.2 (1971), *Allman v. United States,* 131 U.S. 31, 33 L. Ed. 51, 9 S.

Ct. 632; the Immigration Act, 8 U.S.C. sec. 1229 (1970); the Federal Home Loan Bank Act, 12 U.S.C. sec. 1425b(b) (1970); Atomic Energy Commission, 42 U.S.C. sec. 2282 (1970); Federal Railroad Safety and Hazardous Materials Transportation Control Act of 1970, 45 U.S.C. sec. 435 (1970); Endangered Species Conservation Act of 1969, 16 U.S.C. sec. 668 (1970); Water Pollution Control Act, 33 U.S.C. secs. 1321(b), 1415 (1970); Ports and Waterways Safety Act of 1972, 33 U.S.C. sec. 1226; Marine Protection, Research and Sanctuaries Act of 1972, 16 U.S.C. sec. 1433; Federal Environmental Pesticide Control Act of 1972, 7 U.S.C. sec. 136*l*; Marine Mammal Protection Act of 1972, 16 U.S.C. sec. 1375; see also Goldschmid, 2 Recommendations and Reports of the Administrative Conference of the United States, July 1, 1970-December 31, 1972, app. I (hereafter cited as Administrative Conference).

The Administrative Conference of the United States (5 U.S.C. sec. 571 *et seq.*) in a recommendation to the Congress made on December 14, 1972 (Recommendation 72–6, entitled "Civil Money Penalties as a Sanction") observed: "Federal administrative agencies enforce many statutory provisions and administrative regulations for violation of which fixed or variable civil money penalties may be imposed. \*\*\* Increased use of civil money penalties is an important and salutary trend. \*\*\* In many areas of increased concern (*e.g.,* health and safety, the environment, consumer protection) availability of civil money penalties might significantly enhance an agency's ability to achieve its statutory goals." 2 Administrative Conference 67-68.

In a report in support of Recommendation 72–6 Professor Harvey Goldschmid stated: "Although a few questionable state cases exist, the leading commentators (1 K. Davis, secs. 2.12-2.13; L. Jaffe [Judicial Control of Administrative Action (1965)] 109-15; W. Gellhorn, [Administrative Prescription and Imposition of Penalties,

1970 Wash. U.L.Q. 265,] 285) and a number of Supreme Court decisions (see, *e.g., Helvering v. Mitchell,* 303 U.S. 391 (1938); *Lloyd Sabaudo Societa v. Elting,* 287 U.S. 329 (1932); *Elting v. North German Lloyd,* 287 U.S. 324 (1932); *Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320 (1909)) indicate that an administrative imposition system can surmount constitutional barriers. This report concludes that there are no significant constitutional impediments to such a system, even though agencies will, at times, be delegated functions traditionally exercised by Congress or the courts." 2 Administrative Conference, An Evaluation of the Present and Potential Use of Civil Money Penalties as a Sanction by Federal Administrative Agencies 896, 901-902.

State courts as well have approved grants of power to administrative agencies to impose monetary penalties.

New York's insurance law providing for monetary penalties for violations after notice and hearing by the superintendent of insurance has been upheld. *(Old Republic Life Insurance Co. v. Thacher* (1962), 12 N.Y.2d 48, 234 N.Y.S.2d 702.) In *Jackson v. Concord Co.* (1969), 54 N.J. 113, 253 A.2d 793, the Supreme Court of New Jersey observed that there could not be any valid constitutional objection to the grant of authority to award money damages "at this advanced date in the development of administrative law" (54 N.J. at 126, 253 A.2d at 800) and in view of a provision in the statute for judicial review. The Supreme Court of Utah held that a statute authorizing the Public Service Commission to impose discretionary monetary penalties was not unconstitutional. Citing *Helvering v. Mitchell,* 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630, the court said it was "well established" that an agency might be given such authority without violating the separation of powers. *Wycoff Co. v. Public Service Commission* (1962), 13 Utah 2d 123, 126, 369 P.2d 283, 285; see also *Rody v. Hollis* (1972), 81 Wash. 2d 88, 500 P.2d 97; *General Drivers & Helpers Union Local 662 v. Wisconsin Employ-*

*ment Relations Board* (1963), 21 Wis. 2d 242, 124 N.W.2d 123.

We would observe, too, that by statute in Pennsylvania the Environmental Hearing Board may impose monetary penalties for violations of the State's Clean Streams Law. (Pa. Stat. tit. 35, sec. 691.605 (1970).) In *United States Steel Corp. v. Department of Environmental Resources* (1973), 7 Pa. Cmwlth. 429, 300 A.2d 508, the court considered the fairness of a penalty that had been imposed, but no challenge was made to the delegation of authority to the Board.

It is clear that the trend in State decisions is to allow administrative agencies to impose discretionary civil penalties. See W. Gellhorn, Administrative Prescription and Imposition of Penalties, 1970 Wash. U.L.Q. 265; McKay, Sanctions in Motion: The Administrative Process, 49 Iowa L. Rev. 441 (1964); K. Davis, 1 Administrative Law Treatise sec. 2.12.

This court has upheld the delegation to administrative agencies of the power to impose what practically, though not formally, may be considered penalties. (See, *e.g., Cermak Club, Inc. v. Illinois Liquor Control Com.,* 30 Ill.2d 90 (revoking a license); *Vissering Mercantile Co. v. Annunzio,* 1 Ill.2d 108 (publishing names of minimum-wage-law violators); *Gadlin v. Auditor of Public Accounts,* 414 Ill. 89 (denying a license); *People ex rel. Rice v. Wilson Oil Co.,* 364 Ill. 406 (entering penalty on bond to secure tax payments); see also *Nolting v. Civil Service Com. of Chicago,* 7 Ill. App. 2d 147 (discharging or otherwise disciplining police officer).) It has been observed that, realistically viewed, there is no significant difference between the power given to impose what really operate as penalties, such as in the above instances, and the power to impose a monetary penalty. Davis, sec. 2.13; Jaffe, Judicial Control of Administrative Action 112.

This court has also considered cases in which there were delegations of what clearly were set out as powers to

impose penalties. In *Cleveland, Cincinnati, Chicago and St. Louis Ry. Co. v. People ex rel. Barter,* 212 Ill. 638, for example, this court held that the authority of the tax assessor and county clerk to assess a penalty against land owners who fail to clean streams on their lands, as required by the Drainage Act, constituted an unconstitutional delegation of judicial power. However, under the statute there were no standards for the guidance and control of the administrative officers, no provisions for hearing and none for judicial review.

In *Reid v. Smith,* 375 Ill. 147, the Prevailing Wage Act was considered. That act provided a penalty of $10 a day against any contractor for public work for each employee who was not paid the prevailing wage. The Act authorized the Department of Labor or the other public contracting body to withhold these penalties from the contract price to be paid the employer. This court held, citing *Cleveland, Cincinnati, Chicago and St. Louis Ry. Co. v. People ex rel. Barter, that the statute con*
*Barter,* that the statute conferred judicial authority contrary to the constitutional separation of powers. However the statute in *Reid* bears little resemblance to the legislation before us. In *Reid* the Prevailing Wage Act was declared unconstitutional, because, *inter alia,* while the statute provided that in all contracts for public works the contractors had to pay the prevailing local wage per diem, the statute neither defined the term "prevailing wage per diem" nor furnished a standard for ascertaining such a wage.

In *Department of Finance v. Cohen,* 369 Ill. 510, the statutory power to impose a tax penalty was upheld, and in *Department of Finance v. Gandolfi,* 375 Ill. 237, the authority to enter tax-deficiency assessments was approved. However, the amounts of the penalties in these cases were determined purely by application of an arithmetical formula.

We would note also that under the Workmen's

Compensation Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.19(k)) if there has been any unreasonable or vexatious delay of payment due under the Act, the Industrial Commission may award compensation additional to that payable under the Act equal to 50% of the award. We have never passed on the constitutionality of the Commission's having been given this power to penalize, but this court has upheld penalties imposed by the Commission. See *Board of Education v. Industrial Com.*, 351 Ill. 128; *Dyer v. Industrial Com.*, 364 Ill 161.

We have already noted, in comments quoted from Cooper and Davis, the importance given by courts to the presence or absence of provisions for judicial review of administrative action, when considering questions of improper delegations of powers. Opportunity for judicial review certainly has been influential in the decisions of this court when claims have been made that delegations to administrative agencies have violated the separation of powers. This has been described by Braden and Cohn in their *Illinois Constitution: An Annotated and Comparative Analysis* (1969), prepared for the Illinois Constitution Study Commission:

> "As a general rule, delegation to administrators or agencies of the quasi-judicial power to adjudicate rights or to revoke privileges such as licenses is not invalid so long as there is an opportunity for judicial review of the administrative action. Such judicial review normally permits an aggrieved party to contest the fairness of the procedure used, the constitutionality of the substance of the regulatory statute and implementing rules and regulations, the correctness of the administrator's interpretation of the statute under which he operates, and whether or not his decision was arbitrary. In short, if the judiciary is given an adequate opportunity to review what has

been done, the principle of separation of powers —or due process of law, if you will—is generally satisfied." Braden and Cohn, at 104-105.

Turning to the Environmental Protection Act, we consider that the authority given the Board to impose monetary penalties does not violate the constitutional separation of powers. The interpretations given the separation doctrine by this court and by the Supreme Court of the United States, the decisions approving delegations of authority to impose civil penalties, the detailed hearing and related provisions of the statute, the Act's providing for adequate judicial review, and the statute's establishment of protective guidelines that the Board must follow in imposing penalties, direct this conclusion.

To consider some of the Act's provisions: It separates the investigative and prosecuting body, the Environmental Protection Agency, from the adjudicative body, the Board. (Ill. Rev. Stat. 1971, ch. 111½, pars. 1004-06.) The statute requires notice to be given of complaints filed with the Board. (Ill. Rev. Stat. 1971, ch. 111½, par. 1031(a).) At the public hearing, which is required, the parties have a right to be represented by counsel, to cross-examine witnesses, and to exercise subpoena power, and the standard of admissibility for evidence is the standard under the law of rules of evidence in civil actions. Ill. Rev. Stat. 1971, ch. 111½, pars. 1031-1032; Pollution Control Board Regulations 301-333.

As additional protection against arbitrariness, and as guidelines for the Board, the Act provides that:

"In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to:

(i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;

(ii) the social and economic value of the pollution source;

(iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and

(iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source."

Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c).

The Act provides that the findings and orders of the Board are reviewable by the appellate court under the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1041; ch. 110, par. 275 *et seq.*). The court may consider all questions of law and fact in the entire record. Cases reviewed and the holdings include: *Citizens Utilities Co. v. Pollution Control Board,* 9 Ill. App. 3d 158 (Board may not impose monetary penalty as a condition to granting a variance); *Seegren v. Environmental Protection Agency,* 8 Ill. App. 3d 1049 (Board's finding is not supported by the evidence); *McIntyre v. Pollution Control Board,* 8 Ill. App. 3d 1026 (Board's finding is not supported by the evidence); and *North Shore Sanitary Dist. v. Pollution Control Board,* 2 Ill. App. 3d 797 (Board cannot base its findings on information not in the record).

The people of this State have expressed their determination to preserve and improve the environment. Article XI of the Constitution of 1970 provides:

"Section 1. Public Policy—Legislative Responsibility

The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

Section 2. Rights of Individuals

Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law."

The Environmental Protection Act, enacted in 1970, is consistent with the command of section 1 of article XI. An agency to make investigations throughout the State and present complaints of environmental abuse was provided. A Board was created to conduct hearings and to make appropriate determinations and orders, including the imposition of penalties. The Act obviously contemplates a specialized statewide and uniform program of environmental control and enforcement. The legislature considered this could be more readily brought about if the responsibility of imposing penalties was placed on the same authority that conducted hearings and determined violations.

The Board is to conduct hearings and, if violations are found, appropriately it is to impose penalties. The legislature may confer those powers upon an administrative agency that are reasonably necessary to accomplish the legislative purpose of the agency (*Department of Public Works and Buildings v. Lanter,* 413 Ill. 581, 587; *Reif v. Barrett,* 355 Ill. 104, 133), and we consider that it was appropriate to give the Board the authority to impose monetary penalties.

There are adequate standards provided and safeguards imposed on the power given the Board to impose these penalties. The granting of this authority does not constitute an unconstitutional delegation of judicial power.

For the reasons given, the judgment of the appellate court is reversed.

*Judgment reversed.*