METROPOLITAN SANITARY DISTRICT, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.,* Respondents.

(No. 57800; ▮▮▮▮▮▮

First District (4th Division)—December 11, 1974.

*Rehearing denied January 24, 1975.*

Allen S. Lavin and Sidney B. Baker, both of Chicago (Phillip Rothenberg, James B. Murray, and Paul D. Lindauer, Jr., of counsel), for petitioner.

William J. Scott, Attorney General, of Springfield (Douglas T. Moring, Richard W. Cosby, and Harvey M. Sheldon, Assistant Attorneys General, and Richard F. Sarna, Senior Law Student, of counsel), for respondents.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The Metropolitan Sanitary District, referred to here as the District, which operated the treatment plant in the Village of Streamwood complained about inadequacies in the maintenance of the sewer system of the Village which impeded the adequate operation of the District's treatment facilities. The District requested the Village on numerous occasions to decrease the amount of storm-water flow into the Village sewer collection system and thereby into the District's treatment plant. The District then denied sewer permits for the development of those areas serviced by the Streamwood treatment plant.

In 1965 the District recognized the need for additional waste-treatment capacity in the Poplar Creek Drainage Basin, and land was acquired for the construction of the projected Poplar Creek Waste Reclamation Plant, which would make the Streamwood plant obsolete. The District engaged in a substantial amount of preparatory work for the

construction of the Poplar Creek facilities. In February, 1968, the District deleted from its construction program a projected expansion of the Streamwood plant.

The District, being pressed for funds to meet the ever-increasing demands of new developing areas for proper sewage-treatment facilities, had to look for Federal funds and State grants to meet the demand.

The Northeastern Illinois Planning Commission was designated by the Governor of the State of Illinois as to the area-wide planning agency which was to review applications for available Federal and State funds. Previous to that time the Northeastern Planning Commission had failed to give its approval to the District's Poplar Creek project because it ran counter to the Commission's regional plan which foresaw that the entire Poplar Creek Drainage Basin was to be serviced by the Elgin Sanitary District, which project was objected to by the Elgin district.

In March, 1971, the Northeastern Planning Commission formally approved its regional waste-water plan over the strong objection of the Metropolitan Sanitary District and transmitted the plan to the Environmental Protection Agency for certification. Thereafter the District applied to the agency for a Federal and State grant for the construction of the Poplar Creek treatment plant but was denied any funds for the reason that the plant would not conform to Northeastern's regional plan. Blocked in its endeavor to obtain Federal and State grants to build the Poplar Creek facility, and to find a satisfactory solution under the regional plan, the District decided to build the plant with its own funds. The District asked the Environmental Protection agency whether a permit to construct the facility would be granted despite the fact that the projected facility would not conform to the regional plan. The agency answered the question in the affirmative on January 20, 1972.

In August, 1970, the District recognized that the Poplar Creek plant could not be constructed in the immediate future due to the disputes which had arisen. The District then made arrangements to install the interim facility at the Streamwood plant which had been deleted from its program in February, 1968. The Environmental Protection Agency refused to certify the interim facility, and the District applied again for a variance.

At the same time the Environmental Protection Agency filed an enforcement complaint against the District charging that the District failed to meet the water-quality standards set forth in the Environmental Protection Act and the rules and regulations of the Pollution Control Board, and that from September 22 to September 24, 1971, the District discharged a degraded effluent from the treatment plant.

The District admitted, as far as the latter charge was concerned, that

the effluent was degraded between September 22 and September 24, 1971, but pointed out that this incident was caused by the taking out of service of one of the two trickling filters at the plant in order to replace a mercury seal, upon the express directive of the Environmental Protection Agency. The District demonstrated during the hearing that it had to obey the order of the agency and that it could not do anything under the circumstances to prevent the discharge of inadequately treated effluents during the replacement period. The District's evidence was not rebutted by the agency, as acknowledged by the Board in its decision. The Board, nevertheless, in its order, imposed upon the District a penalty of $1,000 for violation of certain stream standards during the replacement of the trickling-filter seal, and a penalty of $5,000 for water pollution and violation of water-quality standards in the operation of the Streamwood plant.

■■ The District is seeking a review from that part of the order of the Pollution Control Board which assessed monetary penalties against the District under provisions of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1042). This issue has been a subject of several opinions resulting in conflicting decisions. Our supreme court resolved this issue in *City of Waukegan v. Pollution Control Board*, 57 Ill.2d 170, 311 N.E.2d 146. The opponents of the theory that an administrative agency can assess monetary penalties claimed that it violates the separation-of-powers provision of the Illinois Constitution. In the *City of Waukegan* appeal, Justice Ward said that the trend in State decisions is to allow administrative agencies to impose discretionary civil penalties.

Justice Ward, quoting from Braden and Cohn, THE ILLINOIS CONSTITUTION: AN ANNOTATED AND COMPARATIVE ANALYSIS (1969), prepared for the Illinois Constitution Study Commission, said:

> "As a general rule, delegation to administrators or agencies of the quasi-judicial power to adjudicate rights or to revoke privileges such as licenses is not invalid so long as there is an opportunity for judicial review of the administrative action. Such judicial review normally permits an aggrieved party to contest the fairness of the procedure used, the constitutionality of the substance of the regulatory statute and implementing rules and regulations, the correctness of the administrator's interpretation of the statute under which he operates, and whether or not his decision was arbitrary. In short, if the judiciary is given an adequate opportunity to review what has been done, the principle of separation of powers —or due process of law, if you will—is generally satisfied." 57 Ill.2d 170, 181-2.

■■ For the reasons given, the order of the Illinois Pollution Control Board is affirmed.

Order affirmed.

BURMAN and JOHNSON, JJ., concur.