(No. 63830

THE PEOPLE OF THE STATE OF ILLINOIS, v. JU-
LIA A. INGHRAM, Appellee (Jim Edgar, Secretary
of State, Appellant).

*Opinion filed October 5, 1987.*

CUNNINGHAM, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellant.

No appearance for appellee.

JUSTICE WARD delivered the opinion of the court:

The defendant, Julia A. Inghram, was issued a traffic summons on April 2, 1986, for driving under the influence of alcohol (DUI), and her driving privileges were summarily suspended (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1). Inghram filed a petition for limited driving privileges in the circuit court of Adams County requesting the issuance of a Judicial Driving Permit (JDP), as authorized by section 6—206.1 of the Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1985, ch. 95½, par. 6—

206.1). The petition alleged that it was necessary to have an automobile to travel to her place of employment. The circuit court dismissed the petition on the ground that section 6—206.1 is unconstitutional as violating the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, sec. 1). The Secretary of State (hereafter Secretary) appealed directly to this court pursuant to Supreme Court Rule 302(a) (107 Ill. 2d R. 302(a)). The defendant has not filed a brief in this court.

Where relevant, section 6—206.1 provides:

> "Declaration of Policy. It is hereby declared a policy of the State of Illinois that the driver who is impaired by alcohol or other drugs is a threat to the public safety and welfare. Therefore, to provide a deterrent to such practice and to remove problem drivers from the highway, a statutory summary driver's license suspension is appropriate. It is also recognized that driving is a privilege and that in some cases the granting of limited driving privileges, within the bounds of public safety, is warranted during this period of driver's license suspension in the form of a judicial driving permit to allow the person to continue employment and drive in connection with other necessary activities where no alternative means of transportation is available." Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1.

The statute provides that one who has been arrested for the first time of driving while under the influence of alcohol or other drugs, after notification of the statutory summary suspension of driving privileges, may petition the circuit court for a JDP to avoid undue hardship. The issuance of a JDP is to be subject to certain conditions if issued to a petitioner in order to drive to his place of employment and subject to other conditions if issued to allow a means of transportation in order to receive alcohol or drug treatment or other medical care. (Ill. Rev. Stat. 1985, ch. 95½, pars. 6—206.1(a)(1), (a)(2).) The statute also provides that a JDP shall not be issued to

(1) any person unless the court is satisfied, after reviewing evaluations of the person's alcohol or drug use, that granting limited driving privileges will not endanger the public safety or welfare; (2) any person convicted of reckless homicide within the previous five years; and (3) any person whose driver's license was invalid at the time of arrest for DUI. (Ill. Rev. Stat. 1985, ch. 95½, pars. 6—206.1(a)(3)(i) through (a)(3)(iii).)

The statute further provides:

"(b) Prior to the issuance of a JDP the Court should consider at least, but not be limited to, the following issues:

1. Whether the person is employed and no other means of commuting to the place of employment is available or that the person must drive as a condition of employment. ***

2. Whether the person must drive to secure alcohol or other medical treatment for himself or a family member.

3. Whether the person has been repeatedly convicted of traffic violations or involved in motor vehicle accidents to a degree which indicates disrespect for public safety.

4. Whether the person has been convicted of a traffic violation in connection with a traffic accident resulting in the death of any person within the last 5 years.

5. Whether the person is likely to obey the limited provisions of the judicial driving permit.

6. Whether the person has any additional traffic violations pending in any court.

***

(c) Any JDP issued by the court under this Section shall be limited to the operation of a motor vehicle between the petitioner's residence and place of employment and shall specify days of the week and specific hours of the day when the petitioner is able to exercise the limited privilege of operating a motor vehicle. In addition, the court may establish whatever privileges or other limita-

tions may be relevant to the granting of the JDP. If the Petitioner, who has been granted a JDP, is issued a citation for a traffic related offense or is convicted of such an offense during the term of the JDP, the court shall consider cancellation of the limited driving permit. A cause for cancellation of a JDP may exist if a petitioner who has been granted a JDP is issued a citation for operating a motor vehicle outside the limitations prescribed in the limited driving permit, or is issued a citation for a violation of Section 6—303. In any case, if the Petitioner commits an alcohol related offense, the JDP shall be cancelled." (Ill. Rev. Stat. 1985, ch. 95½, pars. 6—206.1(b), (c).)

The statute also provides that the Secretary shall provide the official JDP forms to the clerk of the circuit court and that the form shall include a notification of the issuance of a JDP to the Secretary. Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1(d).

The circuit court held that section 6—206.1 improperly assigns to the judicial branch the responsibility for the issuance of hardship driver's licenses on the ground that that was a function normally performed by the Secretary as a member of the executive branch of government. In holding the statute unconstitutional, the circuit court observed that, although section 2—101 of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 2—101) vests the Secretary with numerous powers and duties of administration under the Code, section 6—206.1 "purports to vest the power to issue a special type of driving permit in the courts." The circuit court went on to say that courts have power over justiciable matters, but that the issuance of a driver's license is not an adjudication of a right to drive. Rather, the issuance of a driver's license is, the court said, an administrative decision. The court judged that its decision on this was supported under sections 2—118(e) and 6—212 of the Code, which subject decisions of the Secretary concerning driver's licenses to

the provisions of the Administrative Review Law. Ill. Rev. Stat. 1985, ch. 95½, pars. 2—118(e), 6—212.

At the outset we would note that legislative enactments carry a strong presumption of constitutionality (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 227; *People v. Joseph* (1986), 113 Ill. 2d 36, 41), and a party challenging a statute has the burden of clearly establishing its invalidity (*People v. Bales* (1985), 108 Ill. 2d 182, 188). This court has long recognized that "it is our duty to construe acts of the legislature so as to uphold their constitutionality and validity if it can reasonably be done, and, further, that if their construction is doubtful, the doubt will be resolved in favor of the validity of the law attacked." *McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 103, quoting *Illinois Crime Investigating Com. v. Buccieri* (1967), 36 Ill. 2d 556, 561, *cert. denied* (1967), 389 U.S. 848, 19 L. Ed. 2d 117, 88 S. Ct. 75; see also *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 363; *People v. Davis* (1982), 93 Ill. 2d 155, 161.

The separation of powers clause to our 1970 Constitution provides, "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, sec. 1.) The clause was not designed to produce a complete separation of the three branches of our single State government (*City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 174); rather, the doctrine of separation of powers is designed to ensure "that the whole power of two or more of the branches of government shall not be lodged in the same hands." (*In re Estate of Barker* (1976), 63 Ill. 2d 113, 119; *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 174.) The doctrine, with respect to the relationship between the executive and judicial branches of government, is violated when the challenged provision would confer powers to one branch of government which prop-

erly should be exercised by another branch (see *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170 (legislature's grant of authority to the Pollution Control Board to impose discretionary fines on violators of the State environmental laws was not an unlawful delegation of judicial power to an administrative agency)) or when one branch usurps the authority of another branch (*People v. Joseph* (1986), 113 Ill. 2d 36, 41; see also *People ex rel. Daley v. Moran* (1983), 94 Ill. 2d 41, 46 (separation of powers clause was violated when circuit court ordered, upon its own motion, that the State's Attorney file a criminal information or charge)). Too, this court determined in *In re Estate of Barker* (1976), 63 Ill. 2d 113, that a circuit court may perform certain nonjudicial functions, as provided by a statute, without violating the doctrine. In *Barker* this court acknowledged that the assessment of taxes was a nonjudicial function, which is traditionally the responsibility of the executive branch of government. But it held that a court's ascertainment and assessment of inheritance taxes on an estate did not violate the separation of powers provision by the imposition of administrative functions on the court where the court's functioning would not be disrupted with onerous or time-consuming duties that could interfere with its judicial performance.

While our constitution does not define the term "judicial power," this court has held that it is "the power which adjudicates upon the rights of citizens and to that end construes and applies the law." (*People v. Joseph* (1986), 113 Ill. 2d 36, 41, quoting *People v. Hawkinson* (1927), 324 Ill. 285, 287.) This court held in *People ex rel. State Board of Health v. Apfelbaum* (1911), 251 Ill. 18, that the granting or revocation of a license to practice medicine by the State Board of Health is not an exercise of judicial power, "as that term is understood in reference to the distribution of the powers of govern-

ment." (251 Ill. 18, 23-24.) The agency issuing such licenses "necessarily exercises discretion and judgment in determining whether or not an applicant possesses the required qualifications, and to that extent its action is judicial in character but it is not the action of a court or action appropriate for a court." (251 Ill. 18, 24; see also *People v. Hawkinson* (1927), 324 Ill. 285, 287.) As we noted in *People v. Reiner* (1955), 6 Ill. 2d 337, 342-43, "The difficulty involved in classifying particular acts as exclusively legislative, executive or judicial has been frequently pointed out [citations] and that difficulty has prevented a doctrinaire interpretation of the constitutional provision [concerning separation of powers]." The statute here provides that the court should, at the least, consider the six above-stated issues in determining whether a driver qualifies for a JDP. It also provides that certain defined persons shall not be considered qualified to be issued a JDP, and it specifies factors the court may consider as cause for cancellation of a JDP.

It is generally recognized that the separation of powers clause does not forbid every exercise of functions by one branch of government that is conventionally exercised by another (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 58; *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170) nor does it require "rigidly separated compartments" (*In re Estate of Barker* (1976), 63 Ill. 2d 113, 119; see also *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 58 (the statutory 48-hour waiting period between hearings in a contested marriage dissolution proceeding is not an unconstitutional encroachment upon the rulemaking power of the judicial branch)). In *People v. Farr* (1976), 63 Ill. 2d 209, upon which the Secretary relies importantly, this court considered an attack on a statute on the ground of separation of powers. That decision involved a section of a prior enactment of the Illinois Vehicle Code, which provided that a driver who had

refused to submit to a breathalyzer test when ticketed for driving under the influence could request a hearing before the circuit court. The court was empowered to suspend the driver's license but could also recommend that the person be given a restricted driving permit to avoid undue hardship. This court rejected the defendant's contention that the statute attempted to delegate to the judiciary the power of the Secretary, an official of the executive branch, to suspend driver's licenses. This court decided in *Farr,* and recently reaffirmed this position in *People v. O'Donnell* (1987), 116 Ill. 2d 517, that the separation of powers doctrine does not inexorably preclude one of the three branches of government from exercising powers which could also be given to another branch. *People v. Farr* (1976), 63 Ill. 2d 209, 214.

We cannot say that the issuance of a JDP by a circuit court either confers undue power to one branch of government, usurps the executive branch's powers or unduly burdens the judicial branch with a nonjudicial function. In ascertaining the intent of the legislature, a court will examine the entire statute and seek to determine the objective the statute sought to accomplish and the conditions it wished to remedy. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 362.) The legislature has expressed its determination to safeguard the motoring public through strict laws against drunk drivers, as evidenced in the "Declaration of Policy" at the beginning of section 6—206.1. That section states that such drivers are "a threat to the public safety and welfare." The legislature has provided for the statutory summary suspension of a drunk driver's license. (See *People ex rel. Eppinga v. Edgar* (1986), 112 Ill. 2d 101, 110, *cert. denied* (1986), 479 U.S. 914, 93 L. Ed. 2d 288, 107 S. Ct. 314 (approving provisions for the summary revocation of driving privileges of drunk drivers).) This provision for the issuance of a JDP is consistent with the

declaration of this policy. The General Assembly apparently concluded that it was preferable that the determination of whether a first-time offender whose license has been suspended for DUI can responsibly exercise limited driving privileges for necessary activities should be made in a judicial hearing rather than in an administrative proceeding. This court approved of a similar determination made by the legislature in *Farr*, where this court held that whether the course chosen by the General Assembly was wise or the best means to achieve a desired result is not a proper subject of judicial inquiry. (*People v. Farr* (1976), 63 Ill. 2d 209, 215.) We believe the legislature may assign a circuit court to exercise the powers that are reasonably necessary to accomplish the legislative purpose (*City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 184), and we consider that here it was proper to authorize the circuit court to issue Judicial Driving Permits (*People v. O'Donnell* (1987), 116 Ill. 2d 517). The grant of this authority does not constitute an unconstitutional delegation of executive power to the judiciary.

The circuit court also judged that section 6—206.1 violates the separation of powers clause because it would grant a power to circuit courts that the Secretary exercises under other sections of the Code. The circuit court observed that section 6—113 allows the Secretary to impose restrictions on driving privileges and that section 6—205(c) authorizes the Secretary to issue hardship licenses. (Ill. Rev. Stat. 1985, ch. 95½, pars. 6—113, 6—205(c).) The court concluded that section 6—206.1 improperly gives circuit courts a power over the issuance of hardship licenses that the Secretary already possesses. As we noted above, the separation of powers clause does not of necessity preclude one branch of government from exercising powers which could also be given to another branch. In any event, section 6—113

does not provide the same relief from hardship resulting from a summary suspension of a license after a DUI arrest as does section 6—206.1. Section 6—113 gives the Secretary authority to impose "restrictions suitable to the licensee's driving ability with respect to the type of, or special mechanical control devices required on, a motor vehicle *** or such other restrictions applicable to the licensee as the Secretary of State may determine to be appropriate to assure the safe operation of a motor vehicle." (Ill. Rev. Stat. 1985, ch. 95½, par. 6—113.) This section deals with restrictions that may be imposed as a condition to being granted a driver's license or permit, while section 6—206.1 is concerned with restrictions on driving privileges after a driver's license has been summarily suspended for an arrest under the DUI provision. The two sections clearly are concerned with different circumstances.

The other section where the circuit court found difficulties in the separation of powers context, section 6—205(c), provides that the Secretary may provide a restricted driving permit to an individual required to drive to his employment or other necessary activities after the license has been revoked by the Secretary for various reasons, including a violation of the DUI law. (Ill. Rev. Stat. 1985, ch. 95½, par. 6—205(c).) This section grants the Secretary a similar power to issue hardship licenses when a driver's license has been revoked as section 6—206.1 provides the court to issue a JDP after a driver's license has been summarily suspended on a DUI charge. The Code defines the "statutory summary alcohol or other drug related suspension of driver's privileges" as "[t]he withdrawal by the circuit court of a person's license or privilege to operate a motor vehicle on the public highways for the periods provided in Section 6—208.1. Reinstatement after the suspension period shall occur after all appropriate fees have been paid, unless

the court has evidence that the person would be disqualified. The bases for this withdrawal of driving privileges shall be the individual's refusal to submit to or failure to complete a chemical test or tests following an arrest for the offense of driving under the influence of alcohol or other drugs ***." Ill. Rev. Stat. 1985, ch. 95½, par. 1—203.1.

"Revocation" is defined in the Code as the "termination by formal action of the Secretary of a person's license or privilege to operate a motor vehicle," and the person may reapply for a new license no sooner than one year from the date of revocation. (Ill. Rev. Stat. 1985, ch. 95½, par. 1—176.) Thus, the "revocation" of license referred to in section 6—205(c) differs from the "statutory summary suspension" discussed in section 6—206.1. Both sections provide a type of hardship license but by different authorities under different circumstances. We do not perceive this as presenting a separation of powers violation. "[T]he public interest requires that the three branches in our system of government work cooperatively and in harmony" (*Knuepfer v. Fawell* (1983), 96 Ill. 2d 284, 293), and we consider that these sections of the Code simply provide for that type of cooperation and harmony among the branches of government in enforcing the DUI laws.

For the reasons given, the judgment of the circuit court is reversed.

*Judgment reversed.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.