THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN WILLS, Defendant-Appellant.

(Nos. 12355-7 cons.;

Fourth District—September 19, 1974.

26

John F. McNichols and Thomas Nelson, both of State Appellate Defender's Office, of Springfield, for appellant.

Richard J. Doyle, State's Attorney, of Danville, for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant, John Wills, appeals from judgments entered pursuant to guilty pleas for the offenses of burglary, escape and armed robbery and from concurrent sentences imposed of 3 to 9 years on the burglary, 3 years and 4 months to 10 years for the escape, and 5 to 30 years for the armed robbery. These three appeals have been consolidated for purposes of opinion.

Defendant raises the following issues for resolution by this court:

(1) Whether defendant's guilty pleas to escape and armed robbery were voluntarily entered.

(2) Whether the trial court erred in not informing defendant of the possibility of probation, conditional discharge, and periodic imprisonment before accepting his guilty pleas to escape and armed robbery.

(3) Whether the trial court erred in not informing defendant of of the possibility of consecutive sentences before accepting his guilty pleas to escape and armed robbery.

(4) Whether the trial court erred in not informing defendant of the existence of a mandatory parole term before accepting his guilty pleas to burglary and escape.

On March 13, 1973, defendant's counsel indicated that defendant wished to plead guilty to burglary. The court admonished defendant in regard to sentencing as follows:

"The Court: All right, sir. State statute in this case provides that a person who is convicted of the offense of burglary may be imprisoned in the penitentiary for not less than one nor more than 20 years. Now, this is what is known as an indeterminate sentence, one year being the minimum that the court can set and 20 years being the maximum that the court can set. In the event you should be imprisoned—Now, let me explain that at a sentencing hearing the Court would consider other matters. They would consider probation. You'd have a right to provide for probation. They could consider the possibility of conditional discharge which is a form of probation. The Court would have the sentencing alternative of periodic imprisonment which is a work release type program. But in the event the Court did not select these sentencing alternatives and chose to imprison you feeling that this was the appropriate

sentence, you could be sentence [*sic*] within that range. Now, the full sentence of the Court would be somewhere within that range. Let me give you an example. The Court could set a higher minimum and the Court could set a lower maximum if it saw fit to do so. So by way of example, under the statutory authority, the Court could sentence you to not less than five nor more than 15 years in which case you'd stay at least five years in the penitentiary and could stay up to 15. The Court could sentence you to not less than six years and four months nor more than 20 years. The Court could sentence you to not less than one nor more than three years. The Court will select the minimum and the maximum term within the range that the statute specifies. Do you understand what I mean by an indeterminate sentence and what your exposure would be?

Defendant Wills: Yes, sir.

&ast;   &ast;   &ast;

The Court: Do you understand what the penalty can be for this —up to 20 years in jail?

Defendant Wills: Yes, sir."

It was then pointed out to the court that this plea was not being taken pursuant to any type of plea agreement. The court then entered judgment on the plea.

On May 14, 1973, defendant appeared before the court for a sentencing hearing on the burglary judgment. During the hearing and before imposition of the sentence the court was informed that defendant wished also to plead guilty to the offenses of escape and armed robbery. The court then continued the sentencing hearing in order to take pleas to these charges. The court admonished defendant in regard to sentencing as follows:

"The Court: The statute in this state provides as follows:

A person convicted of a felony or charged with the commission of a felony who intentionally escapes from any penal institution or from the custody of an employee of that inst'tution commits a Class 2 felony. Statute further provides by way of a penalty that a person who commits a Class 2 felony, in this case an escape, while charged with a felony, may be imprisoned in a penal institution for not less than one nor more than 20 years, and in addition thereto fined up to $10,000. Do you have any questions regarding the statutory definition of escape or the possible penalty that could be imposed?

Defendant Wills: No, sir.

The Court: Now, when the statute refers to imprisoned for not

less than one nor more than 20 years, this places limitations upon the Court, and in the event imprisonment were selected, you'd have to be sentenced to at least one year and the Court could not sentence you to more than 20 years. However within this range the Court could select a different sentence with a higher minimum or a lower maximum. Let me give you some examples. By way of example the Court could sentence you to not less than one nor more than three years in which case one year would be the minimum, three would be the maximum. Or the Court could sentence you to not less than three years nor more than nine years in which case three years would be the minimum or the shortest amount of time that you would be entitled to be released and the nine years would be the longest period of time that you could be held. Again by way of example, the Court could sentence you to not less than six years and four months to more than 20 years. Do you understand this?

Defendant Wills: Yes, sir.

The Court: Have any questions' about the range of possible imprisonment terms that the Court could select on this charge?

Defendant Wills: No, sir."

It was then stated to the court that there were no plea-bargaining agreements in existence as to either charge. The court then admonished defendant in regard to sentencing as follows:

"The Court:    *    *    *    Armed robbery is a Class 1 Felony. Statute provides by way of penalty that armed robbery is a Class 1 penalty for which an offender must—may not be sentenced to death. The laws of this state provide by way of penalty that a person convicted of a Class 1 felony shall be imprisoned for four to any number of years plus five years parole. In addition thereto he may be fined up to $10,000. In defining the sentence in armed robbery I would explain to you that you are not eligible for parole upon a plea, finding or conviction of armed robbery.

Mr. Litak: I believe the Court said parole and meant to say probation.

The Court: Thank you for correcting me. I mean probation. You are not eligible for probation. As a matter of fact the parole provision is mandatory. You would serve five years parole time after serving your prison term under any circumstances. The limitations placed upon the Court are simply that the Court must sentence you to at least four years. The upper limit is left entirely within the discretion of the Court. The Court could, in an appropriate case, increase the minimum time. You could be sentenced by way

of example to not less than four nor more than 12 years. You could be sentenced to a higher minimum of not less than 10 nor more than 30 years. You could be sentenced to a term of years where the maximum was greater and the minimum remained at four so that you could conceivably be sentenced to not less than four years nor more than 60 years, any range that the Court might select. Do you understand the possibility of sentence penalty, imprisonment penalty under the armed robbery charge?

Defendant Wills: Yes, sir.

The Court: Do you have any questions about it?

Defendant Wills: No, sir."

The court then later stated to the defendant:

"The Court: Now, let me take a moment to explain the peculiar circumstances we find ourselves in today. You stand before the Court initially for sentencing on a burglary. Burglary carries a sentence of one to 20 years of imprisonment as selected, although you would be eligible to apply for probation, periodic imprisonment, conditional discharge in the burglary. You are now asking the Court to allow you to plead guilty to armed robbery which is nonprobational and escape which carries a possible penitentiary sentence of one to 10 years. I want to be very clear about one thing. If you do not plead guilty today on the armed robbery, you will be sentenced today only for the burglary. I want to make absolutely certain that you understand that I will not take into account the fact that you are charged with an armed robbery or charged with an escape or that you might have escaped or that you've even told me in the plea up to this point that you wish to plead guilty to the escape and the armed robbery. These matters will not be taken into account on a sentence for burglary. I don't want you to plead guilty because you feel, well, this Judge knows about an armed robbery and an escape and he's going to jolt me on the burglary anyway and he's going to take these things into account on the burglary and therefore I might as well plead guilty to all of them. If you are sentenced on your burglary plea, you will be sentenced only on your record as it existed at the time you plead guilty unless additional information is brought to the Court's attention in a proper manner, and no information has been brought to the Court's attention. So in this case if I were to sentence you on the burglary count you would be sentenced only upon the information available to me at the time you plead guilty plus the information that's included in the presentence report. The State then would have a right to bring you back if they wanted to

and try you on the armed robbery or they could bring you back and try you on the escape, but you understand that if we sentence you only on the burglary, this would be the only matter that would be considered by you, and you're not pleading guilty because you feel it's necessary because the Court might take these matters into account in sentencing on the burglary, are you? I've been a little confusing in my remarks. They've rambled on.

Defendant Wills: Yes, sir.

The Court: Understanding this, you wish to plead guilty at this time to the indictment charging you with armed robbery and to the information charging you with escape, is that correct?

Defendant Wills: Yes, sir."

The court then entered judgments on the guilty pleas to escape and armed robbery, conducted a sentencing hearing on all three charges, and sentenced defendant to the concurrent terms stated above. On May 21, 1973, defendant filed his notice of appeal.

■■ It is first contended that defendant was confused about the possibility of receiving an enhanced sentence on the burglary plea were he to plead not guilty to the escape and armed robbery charges. Therefore, the pleas to armed robbery and escape were not voluntarily entered as required by Supreme Court Rule 402(b). It clearly appears from an examination of the record that the trial judge carefully explored this problem with defendant and explained it to him in plain, concise language. Furthermore, the trial judge clearly stated that if defendant pled not guilty to the escape and armed-robbery charges, such a plea would not be considered in sentencing on the burglary charge. Defendant then stated that, understanding this, he still wished to persist in his guilty pleas to escape and armed robbery. We find no merit in this contention.

■■ Defendant next contends that the trial court did not substantially comply with Supreme Court Rule 402(a)(2) in not informing defendant of the minimum sentence prescribed by law before accepting defendant's guilty pleas to armed robbery and escape. Therefore, these pleas should be vacated, and defendant should be permitted to plead anew. We deem this argument to be without merit and controlled by this court's decision in *People v. Butchek*, 22 Ill.App.3d 391, 317 N.E.2d 148. We note that in the present case defendant was informed by the trial court prior to accepting his guilty plea to armed robbery that such an offense was a Class 1 felony carrying an indeterminate term of 4 to any number of years. Defendant was not informed, however, of the possibility of periodic imprisonment under section 5—7—1 of the Unified Code of Corrections. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—7—1). As this court stated in *Butchek* defendant need not be informed of

periodic imprisonment and Supreme Court Rule 402(a)(2) was fully complied with in regard to the armed-robbery charge. We note that defendant was informed by the trial court prior to accepting his guilty plea to escape that such an offense is a Class 2 felony carrying an indeterminate term of from 1 to 20 years. Defendant was not informed, however, of the possibility of probation, conditional discharge and periodic imprisonment. Since whether a defendant need be informed of probation and conditional discharge before accepting a guilty plea in order to comply with Rule 402(a)(2) was not at issue in *Butchek* in that the armed-robbery charge there precluded such sentencing alternatives, we find the rationale of *Butchek* to be equally appl'cable where such alternatives are available. Therefore, defendant need not be informed of the possibility of probation, conditional discharge and periodic imprisonment and Rule 402(a)(2) was also fully complied with in regard to the escape charge.

■■ The trial judge did not admonish defendant as to the possibility of consecutive sentences, nor did he impose a consecutive sentence. This circumstance has been previously considered on several occasions. In *People v. Flannigan*, 131 Ill.App.2d 1059, 267 N.E.2d 739, the trial judge had failed to admonish as to the possibility of consecutive sentences, and he imposed a consecutive sentence. The appellate court reversed. In *People v. Dixon*, 20 Ill.App.3d 65, 314 N.E.2d 697, the trial judge did not admonish as to the possibility of consecutive sentences, but did not impose a consecutive sentence. The appellate court affirmed, finding no resulting prejudice. Other cases have held that where the trial judge *understates* the possible maximum penalty, but sentences within the limits stated no prejudice results to the defendant. (*People v. Hrebenar*, 131 Ill.App.2d 877, 266 N.E.2d 733; *People v. Drisdel*, 17 Ill.App.3d 848, 308 N.E.2d 843; *People v. Reynolds*, 19 Ill.App.3d 641, 312 N.E.2d 293.) We agree that no prejudice results when a defendant has been admonished as to the maximum risk to which he exposes himself in entering a plea of guilty, though that risk is understated by the trial judge, provided he is sentenced within the limits stated to him. Such a rule is fundamentally fair both to the defendant and to the People. The attendant safeguard lies in the requirement that the plea must be vacated in the event that the defendant is sentenced to a term in excess of the maximum stated to him by the trial judge. We therefore overrule our decision in *People v. Zatz*, 13 Ill.App.3d 322, 300 N.E.2d 16, and find no error in the failure of the trial judge to admonish defendant as to the possibility of consecutive sentences where a consecutive sentence was not imposed.

Defendant next urges that his pleas to the offenses of burglary and

escape should be vacated because of the failure of the trial judge to admonish as to the mandatory parole term imposed under the provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—1 *et seq.*), hereinafter referred to as "the Code." This contention requires analysis of the pertinent provisions.

Burglary and escape (in the instant case) are Class 2 felonies. (Ill. Rev. Stat. 1973, ch. 38, pars. 19—1(b) and 31—6(a).) Sections 5—8—1 (a) and (e)(2) of the Code provide that:

> "(a) A sentence of imprisonment for a felony shall be an indeterminate sentence set by the court under this Section.
>
>       *   *   *
>
> (e) Every indeterminate sentence shall include as though written therein a parole term in addition to the term of imprisonment. Subject to earlier termination under Section 3—3—8, the parole term shall be as follows:
>
> (2) for a Class 2 felony * * * 3 years.

The council commentary to that section states:

> "Subparagraph (e) establishes parole terms according to classes of felonies which are an integral part of the sentence of imprisonment. Every indeterminate sentence includes a parole term as though written into the sentence. Thus, although the judge will ordinarily state the appropriate parole term in passing sentence, his failure to do so will *not* affect the automatic inclusion of the parole term in the felony sentence of imprisonment under this section."

■■ The mandatory parole term is clearly a part of every sentence imposed on a felony conviction since section 5—8—1(e) of the Code provides that *every* indeterminate sentence shall include a parole term "* * * *in addition to the term of imprisonment.*" (Emphasis added.) The Code further provides, in section 3—3—5(e) that:

> "*A person who has served the maximum term of imprisonment imposed at the time of sentencing* less time credit for good behavior *shall be released on parole to serve a period of parole under Section 5—8—1* [the mandatory parole period for all indeterminate sentences]" (Emphasis added.)

Section 3—3—9(a) provides:

> "(a) If prior to expiration or termination of the term of parole, the parolee violates a condition of parole, the Parole and Pardon Board may:
>
> (1) continue the existing parole, with or without modifying or enlarging the conditions; or
>
> (2) parole the person to a half-way house; or

(3) *revoke the parole and reconfine the person for a term computed in the following manner*: [emphasis added]

    (i) the recommitment shall be for that portion of the imposed maximum term of imprisonment or confinement which had not been served at the time of parole, less the time elapsed between the parole of the person and the commission of the violation for which parole was revoked, and, in addition, if the person was sentenced on or after the effective date of this act the parole term; and

    (ii) the person shall be given credit against the term of reimprisonment or reconfinement for time spent in custody since he was paroled which has not been credited against another sentence or period of confinement.

                *    *    *

(e) A hearing on revocation shall be conducted before at least one member of the Parole and Pardon Board. * * * A record of the hearing shall be made. At the hearing the parolee shall be permitted to:

    (1) appear and answer the charge of parole violation; and

    (2) bring witnesses in his own behalf.

(f) The Board shall either revoke parole or order the person continued on parole, with or without modification or enlargement of the parole conditions."

The council commentary appended to this section of the statute recites that *"This section increases the potential length of incarceration for persons sentenced on or after January 1, 1973, by making the violator subject to confinement for the remainder of his term of imprisonment and his parole term * * *."* (Emphasis added.)

The traditional concept of parole has entailed the notion of discretionary release and supervision prior to serving of the maximum sentence imposed by the trial judge, with provision for serving no greater term than the maximum sentence upon revocation of parole. Under the foregoing provisions of the Code, however, an entirely different proposition emerges, and it is one which is of significant impact upon the defendant.

The conditions of parole are left, to a substantial degree, to the discretion of the Parole and Pardon Board. The most significant condition imposed by the Code being the prohibition against commission of another offense. See section 3—3—7(a), which provides:

    "(a) The conditions of parole shall be such as the Parole and Pardon Board deems necessary to assist the parolee in leading a law-abiding life. A condition of every parole is that the parolee

will not commit another offense or act of delinquency during the parole term."

■■ Subparagraph (b) of section 3—3—7 provides that in addition to the mandatory conditions of parole set forth about the Parole and Pardon Board may require that the parolee:

"(1) work or pursue a course of study or vocational training;

(2) undergo medical or psychiatric treatment, or treatment for drug addiction or alcoholism;

(3) attend or reside in a facility established for the instruction or residence of persons on probation or parole;

(4) support his dependents;

(5) refrain from possessing a firearm or other dangerous weapon;

(6) report to a parole agent;

(7) permit the parole agent to visit him at his home or elsewhere;

(8) and, in addition, if a minor:

(i) reside with his parents or in a foster home;

(ii) attend school;

(iii) attend a non-residential program for youth;

(iv) contribute to his own support at home or in a foster home."

Under section 3—3—9(a)(1) the Parole and Pardon Board may enlarge or modify the conditions of parole, and under the provisions of this section of the Code parole may be revoked. It is clear that upon revocation a defendant may be incarcerated for a term in excess of the maximum term of the indeterminate sentence imposed by the trial judge. We arrive at this conclusion by reason of the plain language of section 3—3—9 (a)(3)(i) of the Code which provides that upon revocation the Parole and Pardon Board may, in its discretion, reconfine the defendant for that portion of the maximum term which had not been served at the time of parole "* * * *and in addition* * * * *the parole term* * * *"* less the time spent on parole to the date of the commission of the violation giving rise to revocation. The council commentary to this section recites that "This section increases the potential length of incarceration for persons sentenced on or after January 1, 1973, by making the violator subject to confinement for the remainder of his term of imprisonment *and his parole term.*" (Emphasis added.) To exemplify: A defendant is sentenced by a trial judge to an indeterminate term of 1 to 3 years for burglary, a Class 2 felony which carries a mandatory parole term of 3 years. The defendant is paroled at the end of the first year. After 1 year, parole is revoked, and the Parole and Pardon Board may, under the above-quoted provisions of the Code, order the defen-

dant reincarcerated for the remaining 2 years of the 3-year maximum term imposed by the trial judge and for the 3-year mandatory parole term less the 1 year spent on parole. This yields a 5-year period of incarceration on a 3-year maximum sentence. The facts of the example can be altered to yield even harsher consequences to a defendant.

We have found no other jurisdiction in which similar parole provisions exist at the present time, with the exception of the special parole term which is provided for in 21 U.S.C. § 841(c). This section provides for a special parole term which is mandatory in connection with certain narcotics violations. Violation of the conditions of the special parole term can result in a defendant being imprisoned for an additional term of years. In taking a plea in a case in which the defendant is subject to a special parole term, the district judge is required under the provisions of Federal Rule 11 to advise the defendant as to "the consequences of the plea," which must include an admonishment concerning the special parole term. In *United States v. Richardson* (8th Cir. 1973), 483 F.2d 516, in so holding, the court stated that the special parole term possesses ramifications that are different from the traditional concept of parole, and "Further, a violation of the conditions of the terms of the special parole can result in an enhanced sentence for the length of the special parole term, which in effect constitutes a second sentence." See also *Roberts v. United States* (3rd Cir. 1974), 491 F.2d 1236.

In view of the consequences which may flow from a violation of parole conditions, resulting in revocation of parole and possible reincarceration for a term in excess of the maximum term imposed by the trial judge, it follows that imposition of the mandatory parole term entails a direct consequence of the plea concerning which the defendant must be admonished. We would so hold despite the number of pleas taken since January 1, 1973 (the effective date of the Unified Code of Corrections), which would be required to be vacated either on direct appeal or in a post-conviction proceeding, were it not for what we perceive to be basic constitutional infirmities in the statute, which we note as plain error.

In our view these infirmities consist of the denial of procedural due process at the point where the Parole and Pardon Board determines whether or not to revoke parole and impose the sanctions contained in section 3—3—9 of the Code. It is clear that these sanctions entail an enhanced penalty, incarceration in many instances for a term in excess of the maximum term imposed by the trial judge. It is equally plain that in order to invoke the "second sentence" the defendant must commit an act which violates the parole conditions, the Parole and Pardon Board must determine that he has done so, and the enhanced penalty is im-

posed, not for commission of the original offense, but rather as a penalty for the subsequent parole violation.

The only procedural requirements embodied in the Code relating to revocation of parole are contained in section 3—3—9(d) and (e), which provides for written notice of alleged violations, and a revocation hearing conducted before " * * * at least one member of the Parole and Pardon Board," and which requires a record of the hearing. Also it is provided that at the hearing the defendant may appear to answer the charges and may present witnesses in his behalf.

These statutory procedural requirements are supplemented by the rules and regulations of the Parole and Pardon Board which are contained in the publication *"Rules Governing Parole, State of Illinois, Department of Corrections, Parole and Pardon Board,"* only to the extent of providing, at page 14 of the regulations, that a parolee charged with violating a condition of parole shall have a preliminary hearing before a hearing officer designated by the Board to determine if there is cause to hold the parolee for a revocation hearing.

The regulations (p. 39), in addition to following the statutory requirement that the revocation hearing be conducted before " * * * at least one member of the panel * * *" provide that "The member will interview the parolee, any witnesses, and any persons who appear in support of the charge of violation," and that "The member will also consider all reports and written affidavits * * * in support of the charge against him," and that "The member shall not be bound by strict rules of evidence in conducting the hearing." The regulations further provide (p. 38) that having received written notice setting forth the alleged violation the defendant " * * * shall be entitled to disclosure of evidence against him, opportunity to be heard in person and to present witnesses and documentary evidence and shall have the right to confront and cross-examine adverse witnesses (unless the panel member specifically finds good cause for not allowing confrontation)." Neither the statute nor the regulations bestow the right to counsel, nor the right to appointed counsel in the case of indigency. The only reference to counsel is contained in the foreword to the rules, which recites that "As a courtesy, the Board will hear retained counsel when requested and by appointment only." This statement, taken in context, seems to relate to release on parole, not revocation.

■■ The hearing on parole revocation is the critical stage at which the fact of parole violation is established, followed by possible determination to impose the second sentence or enhanced penalty. It is apparent that many of the basic constitutional guarantees afforded to those accused of

committing an act which may result in incarceration are not provided for. There is, as we have noted, no provision for counsel, either retained or appointed. Evidence may be received in the form of affidavits or "records," and the member hearing the case may "for good cause" deny the right of cross-examination. There is no statutory requirement, nor is there any provision in the rules and regulations, setting forth any burden of proof required to establish a violation of the conditions of parole. There is also no provision for trial by jury. The foreword to the rules and regulations (p. 2) recites that "Board [panel] decisions are final and not appealable. Reconsideration can be accomplished only through a successful application for a rehearing * * *." The Code likewise contains no provision for appeal. The Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, dealt with the procedural problems involved in revocation of parole as the term has been traditionally used. In *Morrissey* the revocation would result in the defendant's reincarceration for a term not to exceed the maximum term imposed by the district judge. The court stated, "We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. [Citation] Parole arises after the end of the criminal prosecution, including imposition of sentence * * *." (408 U.S. at 480.) The court continued, "Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' [Citations.] The question is not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment. [Citation.] Once it is determined that due process applies, the question remains what process is due." (408 U.S. at 481.) The court then prescribed certain minimal procedural requirements applicable to traditional parole revocation, many of which are provided by the Code and the rules and regulations of the Parole and Pardon Board. Nevertheless, we are not here concerned with parole in its traditional concept. Here the parole revocation hearing bears all of the indicia and consequences of a criminal proceeding. Its function is to provide a determination as to whether or not the parolee has been guilty of violating one or more of the terms of his parole, and a finding that he has in fact done so triggers the authority of the Board to impose the enhanced penalty, *i.e.*, further incarceration under the mandatory parole term. That the nature of the interest involved here is within the "liberty * * * language of the Fourteenth Amendment" and within the due process guarantees of article I, section 2 of the 1970 Illinois Constitution does not seem debatable.

In *City of Waukegan v. Pollution Control Board*, 57 Ill.2d 170, 311 N.E.2d 146, the supreme court determined that the authority given to the Board to impose monetary penalties under the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, pars. 1033(b), 1042) did not constitute a delegation of judicial power in violation of the separation-of-power provision of the Constitution of Illinois or in violation of the Constitution of the United States. The court, in arriving at this conclusion, stated: "It is not disputed that there is before us only the question of the imposition of *civil penalties*. There is no contention that the penalties concerned here were designed to be or are considered *criminal sanctions*. [Citation.]" (Emphasis added.) (57 Ill.2d at 172-173.) The court then discussed and reviewed those cases which had upheld grants of authority to administrative agencies to impose monetary penalties. It then noted that "[o]pportunity for judicial review certainly has been influential in the decisions of this court when claims have been made that delegations to administrative agencies have violated the separation of powers." (57 Ill.2d at 181.) The court stated that, *inter alia*, the Act separated the investigative and prosecuting body from the adjudicative body, that it provided for representation by counsel, that the standard of admissibility for evidence is the standard under the law of rules of evidence in civil actions and that the actions of the Board were reviewable by the appellate court under the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1041; ch. 110, par. 275 *et seq.*).

■■ The importance attached to these safeguards attendant upon the imposition of the civil monetary penalties imposed by an administrative agency and sanctioned by the court in *City of Waukegan* become even more compelling when, as here, criminal sanctions are involved. Furthermore, the authority to impose sentence to a penal institution is purely a judicial function and that authority may not be delegated. In *People v. Montana*, 380 Ill. 596, 44 N.E.2d 569, the supreme court held unconstitutional certain 1941 amendments to the Sentence and Parole Act as an invalid delegation of judicial powers to the Division of Correction, the administrative agency. These amendments provided that the court should make only an advisory recommendation as to the minimum and maximum duration of imprisonment. It was further provided that the Division of Correction could increase or diminish the recommendation of the court by the concurrence of four of its five members (and the approval in writing of the Director of the Department of Public Safety) provided that the minimum term is not less than and the maximum term is not greater than that prescribed by law for the offense. In the process of invalidating those provisions the court used language particularly pertinent to our present discussion:

"* * * *The power to impose sentence as a punishment for crime is purely judicial. The sentence must be definite and certain.* As such it is final, subject only to review by higher courts. As this court said in *People ex rel. Martin v. Mallary,* 195 Ill. 582: 'In the administration of the criminal laws of the State *there is no power outside of the courts to authorize the punishment of persons for crime by confinement in the penitentiary,* and the constitution expressly inhibits any person or collection of persons of one department of government from exercising any power properly belonging to either of the others.' * * * it is seen that a change of the 'recommendation' increasing the maximum is in effect an increase of the sentence by an administrative body. * * * it requires no citation of authority to demonstrate that under our form of government an administrative board has no power to change a judicial judgment. (Emphasis added.) 380 Ill. at 608, 609.

The statutory scheme then, as supplemented by the rules and regulations of the Pardon and Parole Board, establishes, in our view, a mechanism by means of which an administrative agency, appointed by the executive branch of the government, may, without attendant procedural safeguards, and without provision for judicial review, incarcerate an individual for a term of years in excess of the maximum term which the sentencing judge saw fit to impose. This involves a criminal sanction, the imposition of which is a judicial function that cannot be delegated by statute or rule.

■■■ We therefore hold that section 5—8—1(e) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(e)) and that portion of section 3—3—9(a)(3)(i) giving the Parole and Pardon Board the authority to recommit beyond the maximum term of imprisonment imposed by the trial court are unconstitutional and void in that they offend the due process clauses of the fourteenth amendment to the United States Constitution and article 1, section 2, of the 1970 Illinois Constitution and the separation-of-powers provision of article 2, section 1, of the 1970 Illinois Constitution. We conclude then that lack of admonishment as to the mandatory parole term was not error.

Judgment affirmed.

In view of the number of cases pending in the appellate court involving the application of Rule 402 since the effective date of the Code of Corrections, we have this day, on our own motion granted a certificate of importance and directed the same to issue.

SMITH, P. J., and TRAPP, J., concur.