THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v* JOHN BUTCHEK *et al.*, Defendants—(JOHN BUTCHEK, Impleaded, Defendant-Appellant).

(No. 12362; ▮▮▮▮▮▮▮▮▮▮▮)

Fourth District—September 19, 1974.

John F. McNichols, J. Daniel Stewart, and Thomas Nelson, all of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (James W. Jerz, of Model District State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant-appellant appeals from a judgment entered pursuant to a negotiated plea of guilty to the crime of armed robbery. Defendant was sentenced to an indeterminate term of 5 to 20 years. The issues presented are:

(1) Whether the trial court substantially complied with Supreme Court Rule 402(a)(1) in informing the defendant of the nature of the charge.

(2) Whether the trial court substantially complied with Supreme Court Rule 402(a)(2) in explaining to defendant the minimum sentence prescribed by law.

(3) Whether defendant's minimum sentence is excessive.

On May 10, 1973, defendant, John Butchek, was indicted for the offense of armed robbery in violation of section 18—2(a) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 18—2(a)). On May 17, 1973, defendant and two co-defendants appeared without counsel for purposes of arraignment, and Judge Coutrakon entered not guilty pleas for the defendants to expedite the pretrial procedures. In the course of the arraignment the following colloquy occurred:

"The Court: All right.

The three of you are charged in a one-count indictment with the charge of armed robbery in that you did, while armed with a dangerous weapon, a sawed off shotgun, knowingly take property from another person and presence of another, Scott Bell, by threatening the imminent use of force, on the 2d of March, 1973, Sangamon County, Illinois.

That's the general nature of the charge that's pending against you.

Do you understand what the charge is?

Mr. Butchek: Yes.

\* \* \*

The Court: I'm not going to read the indictment. It's real simple, unless you want me to, but I'll give you a copy of it.

Is that good enough for all of you?

Mr. Butchek: Yes.

\* \* \*

The Court: I'll hand each of you a copy of the indictment. Hold on to it. Give it to Mr. Kasten when he—one apiece—when he contacts you, which will probably be today.

\* \* \*

The Court: A copy of the pretrial discovery order, I hand you. Now, hold on to these orders and hold on to a copy of the indictments and give them to Mr. Kasten when he calls on you.

\* \* \*

The Court: Enter a plea of not guilty for the defendants."

On June 5, 1973, one of the co-defendants decided to change his plea to guilty and informed the court that he intended to testify against Butchek. The court discharged Mr. Kasten as defendant's attorney and appointed another counsel.

On June 12, 1973, Butchek, accompanied by his new attorney, moved

before Judge Ackerman to withdraw his plea of not guilty and enter a plea of guilty. Defendant then advised the court that he was 30 years of age and had 14½ years of education including 2½ years of college. The court then stated:

"I take it, then, you read, write and comprehend the English language?

Def. Butchek: Very much so.

\* \* \*

The Court: The crime of armed robbery is defined as follows: 'A person commits armed robbery when he violates Section 18—1 while armed with a dangerous weapon.' And Section 18—1 provides: 'A person commits robbery when he takes property from the person or presence of another by the use of force or by threating the imminent use of force and while armed with a dangerous weapon.'

Do you understand the nature of the charge against you?

Def. Butchek: Yes, I do, your honor.

The Court: The Crime of armed robbery is a Class——

Mr. Roberts: Class 1 Felony.

The Court: ——1 Felony under the Uniform Code of Corrections. The minimum and maximum sentence prescribed by law is as follows: Not less than four ——

Mr. O'Keefe: That's correct.

The Court: —— years, and without a maximum number of years, four years to any number of years, and that is an indeterminate number of years which means not a fixed number of years, but —— well —— five to twenty, for example, and the Uniform Code further provides for a fine not to exceed —— is it ten thousand dollars? —— let's see.

Mr. Roberts: I believe it is, your honor, yes.

The Court: All right, and a parole term of how many years on the end?

Mr. Roberts: Class 1 Felony —— five years.

The Court: Five years \* \* \*."

The court then proceeded to explain to defendant his various rights. Defendant then waived his right to plead not guilty, to a trial by jury, and to a confrontation of witnesses against him and demonstrated a clear understanding of these rights. Defendant then waived his right to a pre-sentencing investigation and to a sentencing hearing. Defendent then stated that he understood that any plea bargain with the State would not be binding on the court. The State then presented a factual

basis for the plea. The State then informed the court that under the plea bargain reached with defendant, the State would recommend a 5 to 20 in return for defendant's guilty plea. Butchek acknowledged the bargain was accurate. The court found that defendant knowingly and understandingly waived his rights. The court then entered judgment on the plea and sentenced defendant to 5 to 20 years with credit for time served while awaiting trial. The docket entry for that date reads in pertinent part:

"* * * Defendant John Butchek sentenced to a term of not less than 5 nor more than 20 years * * * Defendant Granville Smith sentenced to a term of not less than 4 nor more than 12 years * * * Sentence as to each defendant is a negotiated sentence, as per plea agreement * * * The reason for the disparity of sentence herein is due to the difference in criminal record of the two defendants."

Defendant contends that it does not affirmatively appear on the record that he understood the nature of the charge in violation of the provisions of Supreme Court Rule 402(a)(1) which requires that:

"In hearings on pleas of guilty, there must be substantial compliance with the following:

(a) * * * The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge; * * *."

■■ During defendant's initial appearance before the court the factual allegations of the indictment were read to him and defendant indicated that he understood those allegations. At the time the plea was taken the trial judge read to the defendant the statutory provisions which defined the offense in question, at which time defendant again stated that he understood the nature of the charge. The defendant had attended college for 2½ years, and the record demonstrates that he was an intelligent individual who had articulated an understanding of the legal process with rather remarkable clarity and comprehension. This record taken in its entirety clearly establishes that defendant understood the nature of the charge, and this satisfies the requirement of the Rule. (*People v. McCrady*, 131 Ill.App.2d 836, 267 N.E.2d 515; *People v. Carter*, 107 Ill.App.2d 474, 246 N.E.2d 320; *People v. Green*, 12 Ill.App. 3d 418, 299 N.E.2d 535.) Defendant's contentions on this point are simply contrary to the record.

Defendant next contends that the trial judge did not comply with the

provisions of Supreme Court Rule 402 which requires in pertinent part: "In hearings on pleas of guilty, these must be substantial compliance with the following:

(a) * * * The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

* * *

(2) the minimum and maximum sentence prescribed by law * * *." (Ill. Rev. Stat. 1973, ch. 110A, par. 402.)

Specifically defendant urges that the trial judge erred in accepting his plea without explaining the minimum sentence prescribed by law. Defendant was told that the minimum sentence for armed robbery is 4 years, and the maximum any number of years. Defendant was also admonished that a fine of up to $10,000 could be imposed, and that there was a mandatory parole term of 5 years. Defendant maintains that the *minimum sentence* prescribed by law is *not* the minimum term of *imprisonment*, since he could have been sentenced to periodic imprisonment for up to 2 years. Consequently, he urges, the trial judge violated Rule 402 in failing to so admonish the defendant, and his plea should be set aside and the case remanded with directions that he be permitted to plead anew.

Defendant structures his argument in this progression:

First: Rule 402 requires admonishment as to the minimum sentence prescribed by law.

Second: The Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—1—19) defines "sentence" as "* * * the disposition imposed by the court on a convicted defendant."

Third: The "dispositions" available to a trial judge are contained in section 5—5—3 of the Code as follows:

* * *

(d) When a defendant is convicted of a felony or misdemeanor, *the court may sentence such defendant to*:

(1) a period of probation or conditional discharge except in cases of murder, rape, armed robbery * * *;

(2) a term of periodic imprisonment;

(3) a term of imprisonment;

(4) a fine." (Emphasis added.)

Fourth: It therefore follows that since probation, periodic imprisonment, and conditional discharge are "minimum sentences", a defendant, in entering his plea, must be admonished as to their availability. While probation and conditional discharge were not

available in the instant case, periodic imprisonment could have been imposed, and is a lesser minimum than the 4-year minimum required by the provisions of section 5—8—1(b)(2) of the Unified Code of Corrections and stated to him by the court.

We must first determine whether or not the failure of the trial judge to admonish the defendant as to the availability of periodic imprisonment (and probation and conditional discharge where applicable) violates procedural due process and renders the plea constitutionally infirm.

*Boykin v. Alabama*, 395 U.S. 238 (1969), requires that a State court, in accepting a plea of guilty, must, *on the record*, establish the waiver of these three basic constitutional guarantees: privilege against compulsory self-incrimination, right to trial by jury, right to confront one's accusers. *Boykin* also requires that the record establish that the defendant has a "* * * full understanding of what the plea connotes and of its consequences." (394 U.S. at 244.) *Boykin* did not prescribe a formula to be adhered to in the accomplishment of these requirements; the Court did not specify the details of the type of information which must be given the defendant, but only that the record disclose that the plea was voluntarily and understandingly entered.

The Court, in *Boykin*, did not speak in terms of minimum or maximum sentences, but rather required that the record establish the defendant's understanding of the "consequences of the plea." In Footnote 7 the Court set forth an excerpt from an opinion of the Supreme Court of Pennsylvania in the case of *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 237 A.2d 196 (1968). *Rundle* predated *Boykin*. *Rundle* was cited in *Boykin* for the proposition that when the trial judge secures waivers of the three above mentioned constitutional rights with a view to ascertaining that the defendant has an understanding of the connotations of the plea and its consequences "* * * he leaves a record adequate for any review that * * * forestalls the spin-off of collateral proceedings that seek to probe murky memories." (394 U.S. at 244.) The language excerpted from *Rundle* is as follows:

> "'A majority of criminal convictions are obtained after a plea of guilty. If these convictions are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged, and the *permissible range of sentences*.'" (Emphasis added.) (394 U.S. at 244, footnote 7.)

It is the "consequences" of the plea language contained in *Boykin*, together with the "permissible range of sentences" statement in *Rundle*,

which predicates the argument that definition to the defendant of the minimum and maximum range of sentences is a constitutional prerequisite to a valid plea of guilty. We first note that *Rundle* was not cited for that proposition in *Boykin*. We suggest that the opinion of the Supreme Court of Pennsylvania in *Rundle* needs to be read in precise context. In the *Rundle* case, the defendant West had been convicted of the crime of murder on his plea of guilty and sentenced to 10 to 20 years in prison. On appeal the court found that the record failed to show any attempt by the trial judge to determine whether the plea was intelligently and voluntarily made. The court held that this "silent record" coupled with the defendant's allegations required that the case be remanded to the trial court for hearing. (*Commonwealth ex rel. West v. Myers*, 423 Pa. 1, 222 A.2d 918.) Pursuant to the remanding order the trial judge held a hearing and found the plea to have been voluntarily and intelligently made. That judgment was then appealed and was affirmed by the supreme court in *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 237 A.2d 196, and it is language from this opinion which is referred to in Footnote 7 in *Boykin*. In its opinion the court recited that during the course of the hearing before the trial court on remand the defendant testified that trial counsel had never discussed the consequences of the plea with him. Trial counsel testified that they had discussed with defendant the consequences of the plea, the possibility of a jury trial and the permissible range of sentences. The hearing judge accepted counsel's version. The court then stated, "Since the burden of demonstrating that his plea was constitutionally infirm rested upon West * * * we affirm the decision below." The *Rundle* court further recited that appellant, in his brief, urged the court to adopt a Rule providing that failure of the trial judge to conduct an on the record colloquy with the defendant sufficient to demonstrate that the plea was entered with the "* * * constitutionally required degree of voluntariness * * *" would vitiate the plea. The court then declared that the rule proposed by defendant "* * * does not provide sufficient flexibility" though "there is much merit in his insistence upon an on the record examination by the trial judge." Then followed the language quoted in Footnote 7 in *Boykin*. Specifically, *Rundle*, at the time cited in *Boykin*, held that a plea taken on a silent record is not vitiated by that circumstance. It also held that voluntariness and intelligent making of the plea may be subsequently established by information supplied by counsel testifying adversely to the client, and that a Rule requiring reversal ipso facto was too inflexible. The excerpted language was clearly dicta.

Subsequently to the decision in *Rundle* the Supreme Court of Pennsylvania, on November 25, 1968, effective February 3, 1969, amended its

Rule 319(a) to require an on the record inquiry to determine that the plea was "voluntarily and understandingly made." Cases decided by the Supreme Court of Pennsylvania subsequent to the aforesaid amendment have affirmed convictions on pleas of guilty where the trial judge's only reference to penalty was that the defendant could be sentenced to a "term of imprisonment or fine or both." (*Commonwealth v. O'Neill*, 451 Pa. 458, 304 A.2d 108 (1973).) Our research has yielded no case reversed, by the Supreme Court of Pennsylvania, for failure of the trial judge to admonish as to minimum sentence. When *Boykin* and *Rundle* are read against the foregoing background, we do not believe that it can be seriously contended that *Boykin* imposed, as a constitutional standard, a requirement that a defendant be admonished as to minimum sentence.

Federal Rule 11, at the time of the decision in *Boykin v. Alabama*, 395 U.S. 238 (1969), contained no reference to the minimum sentence. The Rule was couched in general terms in that it required that the district judge should not accept a guilty plea without first determining that the defendant understood, *inter alia*, "the consequences of the plea." Numerous Federal cases interpreted the language of the Rule to require admonishment as to the maximum possible sentence, maximum possible fine and the *mandatory minimum sentence*, if any. In *Eagle Thunder v. United States*, 477 F.2d 1326 (8th Cir. 1973), defendant had been admonished as to the maximum possible sentence and the maximum possible fine. He contended that Rule 11 had not been complied with in that he had not been admonished that he could be punished by imprisonment in the county jail not to exceed one year. On appeal the plea was sustained, the court holding the Rule required *only* an understanding of the maximum possible penalty for the offense. To the same effect, *cf., Marshall v. United States*, 431 F.2d 35 (7th Cir. 1970); *Tucker v. United States*, 409 F.2d 1291 (5th Cir. 1969); *Perwo v. United States*, 433 F.2d 1301 (5th Cir. 1970); *Jones v. United States*, 440 F.2d 466 (2d Cir. 1971). The requirement of admonishing the defendant as to the *mandatory minimum sentence*, if any had been established, by case law, in Federal interpretation of the requirement of old Rule 11 that the defendant understand "the consequences of the plea." See *Durant v. United States*, 410 F.2d 689 (1st cir. 1969); *Berry v. United States*, 412 F.2d 189 (3d Cir. 1969); *Bye v. United States*, 435 F.2d 177 (2d cir. 1970); *Jenkins v. United States*, 420 F.2d 433 (10th Cir. 1970); *Harris v. United States*, 426 F.2d 99 (6th Cir. 1970).

Effective July 1, 1974, Federal Rule 11 was amended to require the trial judge, in accepting a plea of guilty to admonish the defendant as to the "mandatory minimum sentence". The committee comments state

that the objective of the amendment is to insure "* * * that a defendant knows what minimum sentence the judge *must impose* and * * * This information is usually readily ascertainable from the face of the statute defining the crime, * * * giving this advice tells the defendant the *shortest mandatory sentence* * * * for the offense to which he is pleading guilty." (Emphasis added.) (62 F.R.D. 278, 279 (1974).) We also note that the *ABA Standards for Criminal Justice*, Pleas of Guilty, section 1.4(c)(ii) (approved draft 1968), required only admonishment of the "* * * mandatory minimum sentence, if any, on the charge; * * *." The Committee Comments state:

> "The emphasis in the case law has been upon the requirement that the judge inform the defendant of the maximum possible punishment. This is understandable, as it is ignorance of the maximum which is most likely to serve as a basis for withdrawal of the plea. However, the Advisory Committee believes that the better practice, which gives the defendant a more realistic picture of what might happen to him, is for the trial judge: (a) to set forth the maximum possible sentence; (b) *to set forth the minimum sentence where there is a mandatory minimum* * * *."
> (Emphasis added.)

The term "mandatory minimum sentence" in the Federal cases means the least possible term which the district judge must impose because imposition or execution of the imposed sentence may not be suspended, probation may not be granted, and parole is not available. The defendant *must*, therefore, be sentenced to a term of imprisonment and *must* serve the entire minimum term imposed. *Bradley v. United States*, 410 U.S. 605 (1973).

Analysis of the federal cases and Rule 11, then, clearly indicates that the primary concern has been that defendant understand the maximum risk which the plea entails, the harshest consequences which might result from the plea. (See *Eagle Thunder v. United States*, 477 F.2d 1326 (8th Cir. 1973); *Bye v. United States*, 435 F.2d 177 (1970).) In *Berry v. United States*, 412 F.2d 189, 192 (3d Cir. 1969), the court stated:

> "The mandate of Rule 11, before and after the 1966 amendment, is designed *to insure that the pleader is made aware of the outer limits of punishment.* At the very least, this means that he must be apprised of the period of required incarceration. Except for capital punishment, no other consequence can be as significant to an accused as the period of possible confinement. *When one enters a plea of guilty he should be told what is the worst to expect.* At the plea he is entitled to no less—at sentence he should expect no more. (Emphasis added.)

Likewise, we have examined various cases and court rules dealing with this problem in California, New York, Missouri, Michigan, and Ohio and find that these jurisdictions are similarly concerned that a defendant comprehend the harshest consequences of the plea, and do not require mention of a minimum term except where a *mandatory minimum* is involved. We have found no case, however, in the reported decisions of those States, or in the Federal cases, or in Illinois (excepting our decision in *People v. Harl*, 11 Ill.App.3d 372, 297 N.E.2d 404, *infra*) vitiating a plea on the ground that the defendant was not admonished as to the minimum sentence, with the exception of those cases involving *mandatory* minimum sentences. It therefore seems clear, that a plea of guilty taken without admonition as to the minimum sentence (excepting those involving mandatory minimums) is not constitutionally infirm.

■■ Rule 402(a)(2) requires the trial judge to determine that the defendant understands the "* * * minimum sentence prescribed by law." Though the plea in question in this case is, in our view, constitutionally valid, the question remains whether it was taken in substantial compliance with the Rule since no mention was made of periodic imprisonment. The Rule was adopted long before January 1, 1973, the effective date of the Unified Code of Corrections. It must, therefore, be read in the context of the sentencing structure in effect at the time of the adoption of the Rule. At that time probation was not a sentence, nor was a fine designated as a sentence and the range of minimum sentences then applicable is demonstrated by the example of the penalties prescribed for the offense of aggravated assault. Section 12—2(b) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 12—2(b)) provided that a person convicted of aggravated assault could be imprisoned in a penal institution other than the penitentiary not less than four days nor more than 1 year or in the penitentiary from 1 to 5 years. These are the minimum sentences "prescribed by law" which appeared on the face of the statute defining the offense and to which Rule 402 referred. The legislature may not enlarge the requirements of Rule 402 by legislative enactment, nor is there any indication that it so intended. The minimum sentences prescribed when Rule 402 was promulgated were minimum in the traditional and commonly understood sense of the word. The designation of probation, conditional discharge and periodic imprisonment as "sentences" in sections 5—1—19 and 5—5—3 of the Unified Code of Corrections does not alter the meaning of the words "minimum sentence" contained in Rule 402, nor does the statute, in our view, alter the substance of the admonishment as to minimum sentences heretofore required under the Rule. Probation, conditional discharge and periodic imprisonment are alternatives available to the trial judge, and

which, in his discretion, he may utilize to ameliorate the harsher consequences entailed in a term of imprisonment. They are alternatives to the traditional term of imprisonment. These alternatives are not minimum sentences within the purview of Rule 402, and the absence of admonishment as to periodic imprisonment was not error. Rule 402 was fully complied with.

■■ In fairness we call attention to defendant's reliance on our opinion in *People v. Harl*, 11 Ill.App.3d 372, 297 N.E.2d 404, with particular attention to certain language contained therein. In *Harl* defendant was convicted of the crime of aggravated assault. The record in *Harl* showed that the defendant was admonished that the minimum sentence was 1 year and the maximum 5 years. Under the provisions of the statute (Ill. Rev. Stat. 1971, ch. 38, par. 12—2(b)), the defendant could have been sentenced to a term of not less than 4 days nor more than 1 year in a penal institution other than the penitentiary and was not so admonished. We held such omission to constitute a violation of the plain language of Rule 402(a)(2) which requires admonition as to the minimum sentence. In so doing we stated, "Without such information, the defendant bargains without knowledge of all his bargaining tools." (11 Ill.App.3d at 394.) This language was plain dicta, and improvidently stated. The primary function of admonishing a defendant pursuant to the requirements of Rule 402 is to accomplish a valid plea of guilty, not to provide him with bargaining tools.

■■ Defendant also contends that his minimum sentence of 5 to 20 for the armed robbery is excessive. The docket entry for the date of sentencing stated:

> "Defendant John Butchek sentenced to a term of not less than 5 nor more than 20 years in the Department of Corrections, Adult Division, State of Illinois, with credit to be given for four months served while awaiting trial. Defendant Granville Smith sentenced to a term of not less than 4 nor more than 12 years in the Department of Corrections, State of Illinois, Adult Division * * * Sentence as to each defendant is a negotiated sentence, as per plea agreement * * * *The reason for disparity of sentence herein is due to the difference in criminal record of the two defendants.*" (Emphasis added.)

It is clear from the factual basis of the plea that both Butchek and Smith entered the motel armed with sawed-off shotguns. Both defendants then took various items from the clerk, and both took the clerk back to the car, tied him up and threw him out of the car some blocks later. Both defendants clearly had the same degree of culpability, yet Butchek received a 5-year minimum while Smith received a 4-year

minimum. The trial judge clearly pointed out that the reason for the disparity was defendant's prior criminal record. However, there is no competent evidence in the record establishing that defendant did, in fact, have a prior criminal record. Pursuant to Supreme Court Rule 615(b)(4) we accordingly reduce defendant's minimum sentence to 4 years and the maximum sentence to 12 years.

For the reasons stated herein the judgment of conviction of the lower court is hereby affirmed, and sentence modified.

Judgment affirmed, sentence modified.

In view of the number of cases pending in the appellate court involving the application of Rule 402 since the effective date of the Code of Corrections, we have this day, on our own motion, granted a certificate of importance and directed the same to issue.

TRAPP, P. J., concurs.

CRAVEN, J., dissents.